IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ENCOMPASS OFFICE SOLUTIONS, INC.,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. **3:11-CV-02487-L** |
| **CONNECTICUT GENERAL LIFE INSURANCE COMPANY d/b/a CIGNA, CIGNA HEALTHCARE OF TEXAS, INC. and GREAT WEST HEALTHCARE n/k/a CIGNA HEALTHCARE OF TEXAS, INC.,** | § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiff Encompass Office Solutions, Inc.'s Motion for Summary Judgment (Doc. 81), filed July 15, 2013; Plaintiff Encompass Office Solutions, Inc.'s Motion to Exclude the Expert Testimony of Ms. Nathalie Woolfrey and Dr. Robert McLaughlin (Doc. 86), filed July 15, 2013; Defendants' Motion for Summary Judgment (Doc. 87), filed July 15, 2013; Plaintiff's Objections to Defendants' Summary Judgment Evidence (Doc. 92), filed August 5, 2013; and Defendants' Objections to and Motion to Strike Plaintiff's Summary Judgment Evidence (Doc. 112), filed September 20, 2013.

After carefully considering the motions, responses, replies, briefs, supplemental briefs, admissible summary judgment evidence, objections, record, and applicable law, the court **grants in part and denies in part** Plaintiff Encompass Office Solutions, Inc.'s Motion for Summary Judgment (Doc. 81); and **grants in part and denies in part** Defendants' Motion for Summary

Judgment (Doc. 87). Specifically, the court determines that Plaintiff has constitutional and prudential standing to assert its claims for benefits under state law and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Plaintiff's summary judgment motion as to standing is, therefore, **granted**, and Defendants' summary judgment motion based on lack of standing is **denied**. Because the court determines that Plaintiff's benefits claims under ERISA should be remanded to Defendants' plan administrator, the parties' summary judgment motions as to Plaintiff's ERISA claims, Defendants' related administrative exhaustion defense, and Defendants' counterclaim to recover alleged overpayments under ERISA are **denied without prejudice**, and this action is **remanded** to the plan administrator for further consideration in accordance with this opinion. With respect to Plaintiff's breach of contract claim under state law, Plaintiff's summary judgment motion is **denied**, Defendants' summary judgment motion is **granted**, and this claim is **dismissed with prejudice**. With respect to Plaintiff's quantum meruit claim, Defendants' summary judgment motion is **denied**. Regarding Defendants' claims to recover alleged overpayments under state law based on theories of unjust enrichment and money had and received, Plaintiff's summary judgment motion is **granted**, Defendants' summary judgment motion is **denied**, and these claims are **dismissed with prejudice**.

Further, unless otherwise stated, the court **overrules as moot** Plaintiff's Objections to Defendants' Summary Judgment Evidence (Doc. 92); **overrules as moot and denies as moot** Defendants' Objections to and Motion to Strike Plaintiff's Summary Judgment Evidence (Doc. 112); and **denies as moot** Plaintiff Encompass Office Solutions, Inc.'s Motion to Exclude the Expert Testimony of Ms. Nathalie Woolfrey and Dr. Robert McLaughlin (Doc. 86).

## I.     Factual and Procedural Background

Plaintiff Encompass Office Solutions, Inc. ("Plaintiff" or "Encompass") brought this action against Connecticut General Life Insurance Company d/b/a CIGNA; CIGNA Healthcare of Texas, Inc.; and Great West Healthcare n/k/a CIGNA Healthcare of Texas, Inc. (collectively, "Defendants" or "Cigna") for wrongful denial of healthcare benefits under Texas law and ERISA.  Encompass has asserted claims for ERISA violations, breach of contract, and quantum meruit, and also requests declaratory relief.

Defendants are health service companies that contract with employers and other plan sponsors to provide administrative services or insure employee health and welfare benefit plans. Encompass is a surgical suite vendor that assists physicians who perform in-office gynecological, urological, and podiatric surgical procedures.  Encompass sets up the surgical suite in the physician's office and provides equipment, supplies, and personnel, including certified nurses and an anesthesiologist, as needed for use during the surgical procedures and recovery after the procedures. Prior to the surgical procedures, Encompass obtained an assignment of plan benefits from plan participants covered under various insurance plans administered or insured by Defendants to recover for the in-office surgery services it provided.

Except for the services provided by anesthesiologists, who billed for professional services separately, Encompass submitted claims for the in-office surgery services it provided.  Cigna initially paid the claims submitted by Encompass totaling approximately $500,000 but, starting in 2009, denied approximately 800 claims submitted by Encompass between 2009 and 2012.  The claims were initially denied for a number of reasons.  The two most common reasons provided for the denials are as follows: (1) "Services rendered by unlicenced providers or entities are not covered

under the benefit plans administered by and or underwritten by Cigna"; and (2) "Your plan does not permit payment for this type of provider." *See, e.g.,* Pl.'s Summ. J. App. 3914, 3950. Some claims were also denied because "benefits are not payable for this service except when provided by a participating provider" or "covered expenses for this service are limited to the maximum reimbursable charge as outline in your plan" so "the provider may bill you for the amount not covered." *Id.* at 3038, 3062. The majority of the claims denied relates to plans governed by ERISA, and each of the claims denied totals approximately $6,200. Encompass used Cigna's internal appeal process to appeal all or nearly all of the claim denials. After the appeals proved unsuccessful, Encompass filed suit on September 22, 2011, to recover for its benefits claims under ERISA and Texas state law.

On, November 8, 2011, Defendants moved to dismiss Encompass's state law claims on the grounds that they were preempted by ERISA, and, alternatively, that it failed to state a claim for relief under Rule 12(b)(6). In addition, Defendants contended that Encompass's allegations regarding assignments of benefits were insufficient for derivative standing under ERISA. In an attempt to correct the deficiencies noted in Defendants' motion, Encompass moved for leave and was permitted to file an Amended Complaint. By order dated July 25, 2012, the court granted in part and denied in part Defendants' Motion to Dismiss. Specifically, the court concluded that Encompass had standing under ERISA to pursue claims to recover medical benefits but not other claims. The court further concluded that Encompass had, at that stage of the litigation, stated state law claims for breach of contract and quantum meruit, to the extent based on non-ERISA governed plans, but that Encompass's quantum meruit claim, to the extent dependent on alleged ERISA plan terms, was completely preempted under ERISA and, therefore, dismissed with prejudice.

After the court ruled on the Motion to Dismiss, Defendants filed their Answer to Plaintiff's First Amended Complaint and Original Counterclaim on August 8, 2012. Cigna's counterclaims are for recoupment of overpayments allegedly made to Encompass under plans governed by ERISA (Count I) and plans that are not governed by ERISA (Counts II and III). With respect to plans governed by ERISA, Cigna seeks to recover alleged overpayments under section 502(a)(3) of ERISA. For plans not governed by ERISA, Cigna seeks to recover alleged overpayments under Texas law based on theories of money had and received and unjust enrichment. Cigna alleges that Encompass received payments in excess of $436,765 that it was not entitled to recover under the plans. As affirmative defenses to Encompass's claims, Cigna asserts that Encompass's claims are preempted by ERISA and barred for lack of standing, laches, unclean hands, and failure to exhaust administrative remedies. In addition, Cigna alleges that Encompass failed to comply with the terms of the benefit plans, the benefits sought are precluded under the plans, and the harm suffered by Encompass is the result of its own conduct. Encompass asserts the following defenses to Cigna's counterclaims: statute of limitations, laches, estoppel, waiver, unclean hands, failure to mitigate, comparative negligence or fault of Cigna or others, and fraud by Cigna.

On August 29, 2012, Encompass moved to dismiss Cigna's claim for overpayment under ERISA (Count I), contending that Cigna lacked standing to pursue a claim under ERISA for alleged overpayments because they do not qualify as ERISA fiduciaries. The court determined that Cigna's pleadings regarding its discretion or authority to adjudicate claims for benefits under the ERISA plans were sufficient to satisfy ERISA's fiduciary requirement and denied Encompass's Rule 12(b)(6) motion to dismiss.

On July 15, 2013, Encompass moved for summary judgment on all of the claims asserted by both parties, except for its claim for quantum meruit based on plans not governed by ERISA. Encompass also moved to exclude the expert testimony of Ms. Nathalie Woolfrey and Dr. Robert McLaughlin. On the same date, Cigna moved for summary judgment on both parties' claims. Cigna continues to maintain that Encompass lacks standing to sue and argues for the first time that the assignment clauses in the plans at issue[1] preclude the assignment of plan benefits. On August 5, 2013, Encompass objected to Cigna's summary judgment evidence. On August 23, 2013, Encompass filed objections to the evidence relied on by Cigna in response to Encompass's summary judgment motion. On September 20, 2013, Cigna filed objections to and moved to strike certain summary judgment evidence relied on by Encompass in support of its summary judgment motion and in opposition to Cigna's summary judgment motion. Encompass contends, among other things, that these objections to Encompass's evidence were not filed timely and should not be considered in ruling on the parties' summary judgment motions. In addition to the foregoing summary judgment materials, the parties notified the court in writing of various supplemental authority and filed more than a dozen briefs disputing the relevance and import of such authority. Overall, the court did not find the supplemental briefs to be particularly helpful.

---

[1] Although the terms "plan" and Summary Plan Description ("SPD") have different legal significance for purposes of deciding Plaintiff's ERISA benefits claims, the parties rely on and refer to the plans and SPDs interchangeably when discussing the terms of the governing plans. For this reason and because both parties rely solely on the terms of the SPDs and do not point to an alternative plan document(s) in the summary judgment record, the court likewise refers to the terms "plan" and "SPD" interchangeably, unless otherwise noted, and concludes that the pertinent terms of the various plans and SPDs are the same. As only a plan can be enforced under § 1132(a)(1)(B), the court treats the relevant SPD or SPDs as the plans. *See Dudley v. Sedgwick Claims Mgmt. Servs. Inc.*, 495 F. A'ppx 470, 471 n.1 (5th Cir. 2012) (citing *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011)); *see also Koehler v. Aetna Health Inc.*, 683 F.3d 182, 189 (5th Cir. 2012) (explaining that, while the Supreme Court in *Amara* "held that the text of § 1132(a)(1)(B) does not authorize courts to enforce the terms of a plan summary, because that provision only authorizes enforcement of the terms of the plan," this section allows courts to "look outside the plan's written language in deciding what those terms are, i.e., what the language means.") (citation, footnote, and internal quotation marks omitted).

## II.     Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita*, 475 U.S. at 587.  (citation omitted).  Mere conclusory allegations are not competent summary judgment

evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id*.; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23. "Whe[n], as here, parties have filed cross-motions for summary judgment, each motion must be considered separately because each movant bears the burden of showing that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law." *Shaw Constructors v. ICF Kaiser Engr's, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004).

## III.    Analysis

### A.    Encompass's Standing to Pursue Benefits Claims

Both parties moved for summary judgment on the issue of whether Encompass has standing to pursue the claims it has asserted in this case.  Cigna's motion focuses on whether Encompass has Article III standing to pursue its ERISA benefits claims, whereas Encompass contends that it has Article III and prudential standing to pursue these claims, as well as its contractual benefits claims that are not governed by ERISA.

"Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).  Statutory or prudential standing "encompasses the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches," and requires that "a plaintiff's complaint fall within the zone of interests protected by the law invoked."  *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (citation omitted).  The issue of whether Encompass has Article III constitutional standing must be decided before addressing the parties' prudential standing arguments.  *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 91-101 (1998) (rejecting the practice of assuming constitutional standing and proceeding directly to the merits); *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 333 (5th Cir. 2002) ("The question of Article III standing must be decided prior to the prudential standing . . . issue[ ].").  The court, therefore, addresses first whether Plaintiff has constitutional standing to assert its claims.

### 1.    Injury in fact (Article III Standing)

Cigna contends that, because Encompass did not hold patients responsible for any portion of the amounts it billed Cigna, never attempted to collect any amounts from patients, and represented that it would not hold patients responsible for any charges billed to Cigna, neither the plan participants nor Encompass has suffered an injury in fact as a result of Cigna denying the claims submitted by Encompass.  Cigna, therefore, contends that Encompass lacks Article III standing to pursue its benefits claims.  For support, Cigna cites *North Cypress Medical Center v. Cigna Healthcare*, No. 4:09-CV-2556, 2012 WL 8019265, at *7 (S.D. Tex. June 25, 2012).

An "injury in fact," which is "an invasion of a legally protected interest which is (a) concrete and (b) actual or imminent, not conjectural or hypothetical," is an element of constitutional or Article III standing. *North Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 190-96 (5th Cir. 2015).  "The party invoking federal jurisdiction" has the burden of proving all three elements necessary for constitutional standing and "[f]ailure to establish any one [of them] deprives the federal courts of jurisdiction to hear the suit." *Ford*, 301 F.3d at 332 (citations omitted).  "At the summary judgment stage, the plaintiff can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts validating [its] right to standing," *id.* at 332-33 (citation and internal quotation marks omitted); however, "when considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim." *Cypress Med. Ctr. Operating Co., Ltd.*, 781 F.3d at 192 (footnote omitted).  The issue of "Article III [constitutional] standing must be decided before [statutory] prudential standing "because it determines the court's fundamental power even to hear the suit." *Ford*, 301 F.3d at 333 (citation and footnotes omitted).

The district court's holding in *North Cypress Medical Center v. Cigna Healthcare* and the subsequent appeal of the case were the subject of much discussion in the parties' summary judgment and supplemental briefs. In a published opinion, the district court initially rejected Cigna's facial challenge to North Cypress's injury-in-fact argument and denied its Rule 12(b)(1) motion to dismiss for lack of standing at the pleading stage. *North Cypress Medical Center v. Cigna Healthcare*, 782 F. Supp. 2d 294, 303 (S.D. Tex. 2011). At summary judgment, Cigna argued again that North Cypress lacked standing, contending that North Cypress's patients, and thus North Cypress, lacked standing to assert an ERISA claim for unpaid benefits because they had not suffered or faced immediate risk of suffering out-of-pocket losses related to their benefits, as North Cypress did not bill patients for the amounts Cigna did not pay and did not intend to do so. *North Cypress Medical Center*, 2012 WL 8019265, at *8. "The district court agreed with Cigna, and found the patients—and thus North Cypress—lacked standing." *North Cypress Med. Ctr. Operating Co., Ltd.*, 781 F.3d at 192.

On appeal, the Fifth Circuit in *North Cypress* rejected Cigna's injury-in-fact argument, which is similar to the standing argument that Cigna asserts in this case. *See Cypress Med. Ctr. Operating Co., Ltd.*, 781 F.3d at 192-96. The Fifth Circuit in *North Cypress* concluded that North Cypress had Article III standing based on the alleged assignments of benefits because a patient's assignment of contractual rights under an insurance policy does not cause those rights to disappear;[2] rather, "a patient suffers a concrete injury if money that she [or he] is allegedly owed contractually is not paid, regardless of whether she [or he] has directed the money be paid to a third party for her [or his]

---

[2] In reaching this conclusion, the Fifth Circuit did not address the adequacy of the assignments at issue but instead remanded the case to the district court to resolve "in the first instance . . . Cigna's attacks on the existence and adequacy of some of the assignments at issue." *North Cypress Med. Ctr. Operating Co., Ltd.*, 781 F.3d at 195 n.55.

convenience" because "[t]he patient in this circumstance is being denied use of funds rightfully hers [or his]," and the assignment of funds by the patient does not change this. *Cypress Med. Ctr. Operating Co., Ltd.*, 781 F.3d at 192-93 (discussing with approval *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1288-91 (9th Cir. 2014), which held that a medical provider had Article III standing under the form assigning its patients' "rights and benefits" even though the medical provider "ha[d] not sought payment from its assigning patients for any shortfall" prior to bringing suit). In addition, the Fifth Circuit in *North Cypress* reasoned that a provider's "failure to pay also denies the patient the [contractual] benefit of her [or his] bargain." *North Cypress Med. Ctr. Operating Co., Ltd.*, 781 F.3d at 193. Because "any patient's injury [was] caused by Cigna's refusal to pay North Cypress as directed, and a favorable decision awarding North Cypress damages [was] likely to redress the injury," the Fifth Circuit in *North Cypress* concluded that the "irreducible constitutional minimum of standing [was] satisfied." *Id.* at 195 (footnote omitted).

Based on the Fifth Circuit's reasoning in *North Cypress*, the court similarly concludes that Encompass has satisfied the elements for Article III constitutional standing, including the concrete injury requirement. Encompass has alleged and submitted evidence to establish that it provided services to patients and plan participants of insurance policies and ERISA plans administered by Cigna, and that Cigna denied the claims for services that were made pursuant to assignments of benefits that Encompass received from patients and plan participants. Because this injury is attributable to Cigna's refusal to pay plan or policy benefits for allegedly covered expenses and is the basis for causes of action asserted by Encompass in this case, it would be redressed by a favorable ruling from this court. *See id.* As the parties dispute whether Encompass obtained an

assignment of benefits for all claims asserted, the court addresses this issue in the next section, which deals with the question of statutory or prudential standing.[3] *See North Cypress Med. Ctr. Operating Co., Ltd.*, 781 F.3d at 195 ("North Cypress also has statutory standing under ERISA for the benefits claims at issue because of assignments from plan beneficiaries.") (footnote omitted).

## 2.  Assignments of Benefits (Statutory or Prudential Standing)

Cigna contends that Encompass cannot pursue claims under ERISA on behalf of the individual plan participants for whom it does not possess an assignment of benefits. Cigna asserts that, while documents produced by Encompass during discovery in this case identified as many as 1,245 claims for benefits that Encompass contends were either underpaid or denied outright, Encompass has not produced assignments for 169 of these claims. Cigna cites *Dallas County Hospital District v. Associates' Health & Welfare Plan*, 293 F.3d 282, 286 (5th Cir. 2002); and *Radiology Associates of San Antonia, P.A. v. Aetna Health, Incorporated.*, No. 03-1152, 2005 WL 578150, at *6 (W.D. Tex. Mar. 2, 2005), for the proposition that only plan participants, beneficiaries, fiduciaries, or assignees have standing to sue under ERISA. As evidence, Cigna relies on a chart that it contends identifies the 169 persons (and corresponding procedure dates) for whom executed "Assignment of Benefits" forms have not been produced by Encompass. Defs.' Summ. J. Br. 11 n.4 (citing Defs.' Summ. J. App. 632-35).

---

[3] Cigna mistakenly conflates Article III constitutional standing with statutory or prudential standing by arguing that Encompass lacks Article III standing because it does not have assignments for all of its benefits claims or, alternatively, its claims are barred by an anti-assignment provision. Whether Encompass has third-party or derivative standing pursuant to assignments of benefits, however, is prudential in nature, not constitutional. *See National Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 209-210 (5th Cir. 2011) ("The Charities alternatively argue that even if their activities are not directly affected by the (c) provisions, they should be afforded third-party standing to raise the rights of other charities not before the court. This argument misapprehends the nature of third-party standing, which is a prudential, not a constitutional, limitation on standing.").

Encompass disagrees and contends in support of its summary judgment motion and in response to Cigna's summary judgment motion that it has derivative standing to sue for payment based on the explicit and implicit assignment of insurance benefits it received from each patient prior to providing services. Encompass contends that the signed, executed "Assignment of Benefits" forms it received from patients confer standing with respect to these persons. Regarding the 169 claims for which Cigna contends that "Assignment of Benefits" forms are lacking, Encompass responds that proof of a written assignment of benefits is not required under federal or Texas law to effectively assign healthcare benefits. Based on the deposition testimony of its corporate representative, Debbie Woods, Encompass further asserts that it:

> routinely received executed "Assignment of Benefits" forms from its patients, and it was Encompass's standard practice to require each of its patients, prior to their surgical procedure, to execute such a form. Furthermore, Encompass fully explained to each patient what Encompass was, what its role in the patient's surgery would be, and that it would bill the patient's health insurance prior to providing its services to that patient. Also, before each procedure, Encompass's scrub nurse would make a copy of the patient's insurance card for Encompass's records.

Pl.'s Summ. J. Resp. 11 (footnotes omitted). Encompass contends that this evidence demonstrates it obtained assignments from all patients and is sufficient to support its motion on standing. Based on the same reasoning, Encompass contends in response to Cigna's motion that this evidence is sufficient to create a genuine dispute of material fact as to whether these patients assigned their benefits to Encompass either explicitly, through the execution of the "Aassignment of Benefits" form that has since been lost or misfiled, or implicitly by accepting medical services from Encompass after providing their insurance information with knowledge that Encompass would submit a claim to its healthcare insurer for payment. Additionally, Encompass asserts that the chart relied on by Cigna that was presumably prepared by its counsel is not competent summary judgment evidence in that it does

not satisfy Federal Rule of Civil Evidence 901 and is inaccurate because it includes a number of claims for which Encompass produced evidence of assignments.

In its reply, Cigna contends that Encompass's summary judgment evidence does not establish that it has assignments for all of its claims. Cigna asserts that Encompass's evidence establishes that it has written assignments for some of the claims included in Cigna's chart, but it still lacks assignments for 154 plan participants. Cigna contends that Encompass cannot overcome its lack of assignments by contending that it obtained oral assignments or proof of insurance from patients because corporate representative Debbie Woods testified that it was Encompass's practice to obtain written assignments, and there is no evidence that Encompass ever obtained oral assignments. In addition, Cigna contends that the insurance cards relied on by Encompass are not evidence of assignments.

It is well established that a healthcare provider has standing to sue derivatively as an assignee to enforce an ERISA plan beneficiary's claim. *Harris Methodist Fort Worth v. Sales Support Servs. Inc. Emp. Health Care Plan*, 426 F.3d 330, 334 (5th Cir. 2005) (citing *Tango Transport v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 893 (5th Cir. 2003)). Similarly, under Texas law, a health care provider has standing to sue under a patient's insurance policy that is not governed by ERISA if it obtained an assignment of the patient's rights under the insurance policy. *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 740 (5th Cir. 2015) (citing *Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*, 393 S.W.3d 379, 387 (Tex. App.—Dallas 2012, no pet.); and *First–Citizens Bank & Trust Co. v. Greater Austin Area Telecomms. Network*, 318 S.W.3d 560, 566 (Tex. App.—Austin 2010, no pet.)). Accordingly, a health care provider can establish standing

to recover under ERISA or Texas law for breach of an insurance policy by proof that it received an assignment of a patient's rights under an insurance policy or ERISA plan.

In determining whether Encompass obtained valid assignments, the court interprets the assignments in accordance with Texas contract law principles and any ERISA plan documents in accordance with ERISA principles. For any written assignment that Encompass received from patients, the court examines and considers the entire writing and gives effect to all provisions of the assignment so that "none [is] rendered meaningless." *Harris Methodist Fort Worth*, 426 F.3d at 334 (quoting *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004)). The court gives contractual terms that are used in a written assignment "their plain, ordinary meaning unless the [assignment] itself shows that the parties intended the terms to have a different, technical meaning." *Id.* (footnote omitted). If an assignment is written in such a manner that "it can be given a definite or certain legal meaning, it is not ambiguous." *Harris Methodist Fort Worth*, 426 F.3d at 334 (citation omitted). On the other hand, when an assignment is "subject to two or more reasonable interpretations, it is ambiguous and extrinsic evidence may be considered." *Id.*

Under Texas law, "an assignment is the act by which one person causes to vest in another his right or property, or an interest therein." *East Tex. Life & Acc. Ins. Co. v. Carver*, 407 S.W.2d 251, 254 (Tex. Civ. App.—Texarkana 1966, writ dism'd). To effect a valid assignment, an insured must do more than authorize the insurer to pay directly to another benefits owed under an insurance policy. *Id.* The insured must manifest an intent to grant or vest in another the "right, title or interest in the benefits payable under the policy," *id.*, without the need for any further action. *Harris Methodist Fort Worth*, 426 F.3d at 335 (citation omitted); *Commercial Structures & Interiors, Inc. v. Liberty Educ. Ministries, Inc.*, 192 S.W.3d 827, 833 (Tex. App.—Fort Worth 2006, no pet.)

(quoting Restatement (Second) of Contracts § 317(1) (1981)). Such a manifestation "may be made either orally or by writing," unless barred by contract or statute, *Harris Methodist Fort Worth*, 426 F.3d at 335 (quoting Restatement (Second) of Contracts § 324 (1981), and may be shown by either direct or circumstantial evidence. *Sorenson v. Dawdy*, 196 S.W.2d 687, 690 (Tex. Civ. App.—Fort Worth 1946, no writ) ("By definition an assignment is the act by which one person causes to vest in another his right or property, or an interest therein."); *but see Texas Life, Accident, Health & Hosp. Serv. Ins. Guar. Ass'n v. Gaylord Entm't Co.*, 105 F.3d 210, 218 (5th Cir. 1997) (distinguishing between assignments of benefits claims and fiduciary duty claims under ERISA and explaining that "[b]ecause an assignment of a fiduciary duty breach claim affects all plan participants, and unsuccessful claims can waste plan resources that are meant to be available for employees' retirements, these claims are not assigned by implication or by operation of law. Instead, only an express and knowing assignment of an ERISA fiduciary breach claim is valid.").

All of the written assignments obtained by Encompass contain the same language. The one-page "Assignment of Benefits" form states in pertinent part as follows:

> I hereby instruct and direct [Cigna] insurance company to pay by check made out to the Encompass address below. Or, if my insurance policy prohibits direct payment, I hereby instruct and direct myself to make a check payable to Encompass at:
>
> 2150 South Central Expressway, Suite 1000
> McKinney[,] Texas 75070
>
> For the medical benefits allowable and otherwise payable to me under my current insurance policy as payment toward the total charges for the services rendered. This is a direct assignment of my rights and benefits under this policy. This payment will not exceed my indebtedness to the above-mentioned assignee.

Pl.'s Summ. J. App. 1132-2856. At the top of the "Assignment of Benefits" form, a space at the top is provided to fill in the practice name, date of surgery, physician's name, name of patient's employer, policy number, insurance group number, the insured's social security number, and whether the insurance is an HMO, PPO, or other type of plan. At the bottom of the "Assignment of Benefits" form, a space is provided for the signature of the policyholder, a claimant if someone other than the policyholder, and a witness, and corresponding signature dates. The language in the "Assignment of Benefits" form unambiguously grants to Encompass the patient's right to recover benefits allowable under the patient's insurance policy for services rendered by Encompass and expressly states that it is "a direct assignment of my rights and benefits under this policy." *Id.* This satisfies Texas's requirement that an assignment must manifest an intent to grant or vest in another the right, title or interest in the benefits payable under a policy without the need for any further action. *Harris Methodist Fort Worth*, 426 F.3d at 335 (citation omitted).

Encompass also presented the undisputed deposition testimony of Debbie Woods to show that, although it was unable to locate some written assignments that may have been accidentally destroyed or misplaced in physician charts or files, it obtained a signed "Assignment of Benefits" form from every patient. Ms. Woods's testimony in this regard is unequivocal, and she steadfastly maintained and insisted, despite repeated questioning by Cigna's counsel, that Encompass had every patient sign an "Assignment of Benefits" form. *See* Pl.'s Summ. J. App. 124-28, 149-52. Specifically, Ms. Woods testified in pertinent part as follows:

> We standardly have an assignment of benefits signed by every patient. . . . Everyone has signed one. . . . [I]t is nice to have the assignment of benefits signed. So they understand unequivocally that there is a third party involved in this called Encompass Office Solutions. . . . It is always possible that those assignments could have ended

up, A, in the doctor's file, B, . . . in anaesthesia's paperwork because we were doing all of their[] [paperwork, or] C, could have ended up with the pre-op and postoperative notes that are in our filing system. But we are confident that they signed them. Now, can I find them all? Obviously not[,] but they were all signed one way or another.

*Id.* at 124, 127, 150.  When asked if it was possible that some of the "Assignment of Benefits" forms may not have been signed, Ms. Woods responded: "No. I would say [with] 100 percent positiveness [that] all assignment of benefits were signed."  *Id.* at 150-51.  Ms. Woods testified that, in addition to the signed Assignments of Benefits forms, patients understood Encompass's role and knew they were assigning their benefits to Encompass because it made copies of the patients' insurance cards and drivers licences, and had them sign other paperwork regarding Encompass's fees.

The court concludes that, taken together, Encompass's evidence of signed "Assignment of Benefits" forms and Ms. Woods's testimony that all patients signed an "Assignment of Benefits" form is sufficient under Texas law to satisfy Plaintiff's burden as the summary judgment movant of establishing that it obtained valid assignments from every patient notwithstanding Cigna's contention that Encompass has failed to produce copies of some of the signed "Assignment of Benefits" forms. It is also sufficient to raise a genuine issue of material fact regarding this same issue in response to Cigna's summary judgment motion.  Cigna, on the other hand, has not presented any evidence that rebuts Plaintiff's evidence of assignments. Cigna instead merely contends that Plaintiff's argument regarding oral assignments and evidence is insufficient to show that it obtained assignments with respect to certain claims because its corporate representative Debbie Woods testified that it was Encompass's practice to obtain written assignments, and there is no evidence that Encompass ever obtained oral assignments.

This contention by Cigna misconstrues the nature and substance of Encompass's argument and evidence. Encompass does not take the position, and Ms. Woods did not testify, that Encompass obtained oral assignments of benefits from patients; rather, Encompass contends, and Ms. Woods testified, that Encompass obtained signed, written assignments from all patients using the "Assignment of Benefits" form. Ms. Woods also testified regarding the circumstances under which the assignments were provided. This evidence has not been refuted by Cigna with any competent summary judgment evidence.[4]

---

[4] The parties dispute whether the chart relied on by Cigna is competent summary judgment evidence. Encompass contends that the chart is not authenticated, and there is no evidence to support any of the information in the chart. Cigna responds that "[T]he chart was created in the course of this litigation to summarize the documents, or lack thereof, that have been produced in this case. The chart is effectively a demonstrative aid and does not have to be authenticated." Defs.' Resp. to Obj. 8 (citing *Safety Nat'l Cas. Corp. v. United States Dep't of Homeland Sec*., No. 4:5-CV-2159, 2007 WL 7131004, at *1-2 (S.D. Tex. Oct. 22, 2007), for the proposition that the district court judge "refus[ed] to exclude demonstrative chart at summary judgment phase). Alternatively, Cigna contends that the chart is a summary of voluminous information. Encompass replies that to qualify as a demonstrative aid, the chart must be a summary of other admissible evidence. Encompass contends that Cigna's chart does not summarize other admissible evidence and instead mischaracterizes the evidence. Cigna contends that, whether the chart accurately reflects the evidence, is for the court to decide.

Under Federal Rule of Evidence 901(a), authentication or identification is a condition precedent to admissibility. Rule 901 does not require conclusive proof of authenticity; it merely requires some evidence sufficient to support a finding that the evidence in question is what the proponent claims it to be. *United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993). Some types of evidence are self-authenticating and require no extrinsic foundation for admission. *McIntosh v. Partridge*, 540 F.3d 315, 322 n.6 (5th Cir. 2008). When a document is not self-authenticating, however, it "can be authenticated under Rule 901(b) by a witness who wrote it, signed it, used it, or saw others do so." *In re Enron Corp. Sec., Derivative & "Erisa" Litigation*, No. MDL 1446, No. H-01-3624, 2003 WL 23316646, at *2 (S.D. Tex. Mar. 27, 2003) (citation omitted). Federal Rule of Evidence 1006 allows the "use [of] a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006. In the district court's discretion, summary charts are ordinarily admissible when:

> (1) the charts are based on competent evidence . . . ; (2) the primary evidence used to construct the charts is available to the other side for comparison in order that the correctness of the summary may be tested; (3) the person who prepared the charts is available for cross-examination; and (4) the jury is properly instructed concerning their consideration of the charts.

*United States v. Winn*, 948 F.2d 145, 159 (5th Cir. 1991). Federal Rule of Evidence 1006 applicable to voluminous writings generally applies to the submission of evidence at trial, but it has been applied in the summary judgment context, as long as the summary is not otherwise objectionable, for example, because it contains hearsay. *See, e.g., Wooten v. Federal Express Corp.*, No. 3:04-CV-1196-D, 2007 WL 63609, at *25 (N.D. Tex. Jan. 9, 2007), *aff'd*, 325 F. App'x 297 (5th Cir. 2009); *Martinez v. Prestige Ford Garland Ltd. P'ship*, No. 3:03-CV-251-L, 2004 WL 1194460, at *4, n.7

Cigna's contention that Encompass lacks prudential standing because it did not produce copies of all the approximately 1,200 "Assignment of Benefits" forms signed by patients is unavailing because, as previously explained, an assignment of benefits may be established by direct or circumstantial evidence, *Sorenson*, 196 S.W.2d at 690, and, unlike an assignment of a fiduciary duty claim under ERISA, an assignment of a claim for benefits need not be in writing to be effective unless required by contract or statute. *Harris Methodist Fort Worth*, 426 F.3d at 335 (citation omitted). Cigna also argues separately that Encompass lacks standing because the contractual terms of the plans at issue preclude the assignment of benefits to third-party providers; however, as

---

(N.D. Tex. May 28, 2004), *aff'd*, 117 F. App'x 384 (5th Cir. 2005). In contrast to summaries governed by Rule 1006, demonstrative evidence is "not to be considered as evidence, but only as an aid in evaluating evidence." *United States v. Harms*, 442 F.3d 367, 375 (5th Cir. 2006); *see also United States v. Buck*, 324 F.3d 786, 790 (5th Cir. 2003) (distinguishing charts and summaries admitted as evidence under Rule 1006 from those "used only for demonstrative purposes to clarify or amplify argument based on evidence that has already been admitted.") (citation and internal quotation marks omitted). Further, demonstrative aids may only be presented for the limited purposes allowed under Rule 611(a) "if they are consistent with the evidence and not misleading." *Harms*, 442 F.3d at 791.

Cigna's chart is not self-authenticating and is not accompanied by an affidavit of the person who prepared it. Consequently, there is no evidence that the chart is what Cigna purports it to be. Additionally, there is no indication that the chart is based on competent evidence, and the court has no way of evaluating the correctness of the summary, as it is unclear what information was used to prepare the summary and whether such information was produced during discovery or made available to Encompass. *See Chapman v. A.S.U.I. Healthcare & Dev. Ctr.*, 562 F. App'x 182, 186 (5th Cir. 2014) (upholding district court's consideration of summaries under Rule 1006 because the court was able to compare the summaries with the primary evidence, the summaries were based on the opposing party's own records and the plaintiff's testimony). Moreover, the person who prepared the chart would not be subject to cross-examination because, based on Cigna's statement that the chart was prepared in the course of litigation, it appears that the chart was prepared by Cigna's counsel. Although demonstrative aids need not be authenticated, they need to be consistent with admissible evidence, and, regardless, they court cannot consider a demonstrative aid in ruling on the parties' summary judgment motions because it is not evidence but only an aid, which in this case is not supported by any underlying evidence. *Harms*, 442 F.3d at 375; *Buck*, 324 F.3d at 790. The case relied on by Cigna does not support a different result, as the charts in that case were not offered as evidence, and the district court in that case made clear that it was not considering the charts as evidence. For all of these reasons, the court determines that Cigna's chart is not admissible and does not constitute competent summary judgment evidence. Accordingly, the court **sustains** Encompass's objection to this evidence, and does not consider the evidence in ruling on the parties' summary judgment motions. Moreover, while Cigna contends that the chart is evidence that Plaintiff failed to obtain assignments for certain persons, the chart merely consists of a list of names and dates. Thus, even if admissible, it is insufficient to show that no genuine dispute of material fact exists or raise a genuine dispute of material fact in response to Plaintiff's motion and evidence that it obtained valid assignments for all benefits claims.

discussed in the next section, the court determines that Encompass is entitled to summary judgment on this issue as well.

### 3. Anti-Assignment Clause (Statutory or Prudential Standing)

In its summary judgment motion, Cigna argues as follows regarding the anti-assignment provisions allegedly included in the policies or plans at issue:

> **Encompass lacks standing under plans that preclude the assignment of benefits to a third-party provider.**
>
> Of the plans under which Encompass seeks to recover benefits, the majority provide that the benefits available to the participants under those plans are personal to the beneficiary and may not be assigned to a third-party. (*See* Ex. 1.A, App. 50). The Fifth Circuit Court of Appeals has held that anti-assignment clauses contained in employee benefit plans must be enforced absent circumstances that are inapplicable here. *See LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 349-350 (5th Cir. 2002). The Court should enforce the anti-assignment clauses contained in the plans under which Encompass seeks to recover benefits and enter summary judgment in favor of Cigna on those claims.

Defs.' Summ. J. Br. 16. In support of its anti-assignment argument, Cigna relies on anti-assignment language included in the A and L Industrial Services, Inc. SPD ("A&L SPD"). *See id.* (citing Defs.' Ex. 1.A, App. 50). In a footnote, Cigna asserts that "[t]here are 236 plans that contain anti-assignment clauses. Cigna is entitled to summary judgment on each of those claims." *Id.* at n.8. In response to Plaintiff's summary judgment motion regarding standing, Cigna similarly asserts:

> Encompass acknowledges that the majority of the plans under which it seeks to recover benefits provide that the benefits available to the participants under those plans are personal to the beneficiary and may not be assigned to a third-party. Encompass also does not dispute that the Fifth Circuit has held that anti-assignment clauses contained in employee benefit plans must be enforced absent circumstances that are inapplicable here. *See LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc.*, 298 F.3d 348, 349-50 (5th Cir. 2002).

Defs.' Summ. J. Resp. 18-19.

In response to Cigna's summary judgment motion and in support of its own motion, Encompass contends that, while it "produced over a thousand signed assignment of benefits forms, establishing that it, as the assignee of the patient, has standing to bring suit for Cigna's wrongful denial of benefits," it is unclear which of these plans Cigna contends contain anti-assignment clauses because it has not presented competent summary judgment evidence of those plans or clauses. Pl.'s Summ. J. Resp. 8 (footnote omitted). Encompass objects to Cigna's reliance on and citation to one page of a single plan to establish the contents of all of the plans at issue. Encompass asserts that Cigna's contention that all of the plans contain the same general language as the A&L SPD is not supported by evidence, and the only proper evidence of what each plans says is the plans themselves.

Encompass further asserts that section 1204.053 of the Texas Insurance Code applies and makes any anti-assignment clauses in the plans void or unenforceable. Encompass contends that, even if enforceable, Cigna has waived its right to rely on the inclusion of any anti-assignment clauses included in the plans because it has routinely ignored these clauses in the past when paying benefits directly to non-participating providers and paid over 300 claims directly to Encompass as a non-participating provider. In addition, Encompass contends that Cigna never previously denied an Encompass claim because of an anti-assignment clause during the claims administration or denial process and is, thus, precluded from doing so now.

Cigna counters that the "best evidence" rule[5] relied on by Plaintiff is inapplicable because evidence relating to the common terms of the plans at issue is not barred by the best evidence rule, and Encompass does not contend that the evidence is inaccurate or fraudulent. Cigna further asserts

_____

[5] The best evidence rule provides that "[a]n original writing, recording, or photograph is required . . . to prove its content" unless the Federal Rules of Evidence or a federal statute provide otherwise. Fed. R. Evid. 1002.

that Encompass "admits" that "a great majority of the SPDs relevant to Encompass's claims contain identical language, and both Encompass and Cigna have introduced SPDs that contain the pertinent language in their respective summary judgment motions." Defs.' Resp. to Obj. 2; *see also id.* at 4 (citing Pl.'s Summ. J. App. 4828-11750; and Defs.' Summ. J. Resp. App. 688-744, 745-815). According to Defendants, Encompass not only admits that most of the SPDs relevant to its claims contain identical language, Encompass has asked the court to rule on its summary judgment motion based on standard language included in two representative SPDs. *Id.* at 4 (footnote omitted).

Cigna argues that Encompass's reliance on section 1204.053 of the Texas Insurance Code is similarly misplaced because this statute applies only to health care providers, which is defined by the statute as "a person who provides health care services under a license, certificate, registration, or other similar evidence of regulation issued by this or another state of the United States." Defs.' Summ. J. Resp. 19 (quoting Tex. Ins. Code § 1204.051(3)). Cigna contends that Encompass does not qualify as a health care provider because it is not licensed and does not have any "other evidence of regulation by Texas or any other state." *Id.* (internal quotation marks omitted). In addition, Cigna contends that, because "Encompass recognizes that the vast majority of the plans under which it seeks benefits are self-funded plans for which Cigna provides administrative services only," the statute is inapplicable and preempted by ERISA.

Finally, regarding Plaintiff's waiver argument, Cigna contends that constitutional standing can never be waived because "standing is a component of the Court's subject matter jurisdiction and challenges to subject matter jurisdiction are never waived, even if raised for the first time on appeal." Defs.' Summ. J. Reply 4. Cigna asserts that, while it "does not dispute that ERISA generally requires

a claim administrator to disclose the basis for a decision to deny benefits, no court has held that a challenge to a party's standing must be raised in a benefits determination letter," and, in any event, it could not have raised its standing arguments during its administrative review of Encompass's claims. *Id.* Cigna contends that Encompass's waiver argument confuses "the issue of whether Encompass has standing with the issue of whether Cigna correctly determined that the services Encompass allegedly provided are not covered under ERISA-governed plans." *Id.*

A non-assignment clause is generally effective and can operate to render a purported assignment invalid. *See LeTourneau Lifelike Orthotics & Prosthetics, Inc.*, 298 F.3d at 352-53. This is premised on the "the well-settled principle that Congress did not intend that ERISA circumscribe employers' control over the content of benefit plans they offered to their employees," and "Congress's intent that employers remain free to create, modify and terminate the terms and conditions of employee benefits plans without governmental interference." *Id.* at 352 (citations and footnote omitted). Whether an anti-assignment clause voids or invalidates an assignment of benefits depends on the court's application of "universally recognized canons of contract interpretation to the plain wording of the . . . anti-assignment clause" at issue. *Id.*

In support of and in response to the summary judgment motions, both parties submitted copies of certain SPDs. While Encompass objects to Cigna's citation to and reliance on the A&L SPD to support its anti-assignment argument, as correctly noted by Cigna, Encompass also relies on the same SPD in support of its own summary judgment motion, wherein it asserts that the provisions in this and another Cigna SPD are identical. *See* Pl.'s Summ. J. Br. 7 n.39 ("All of the employee benefit plans provisions that are relevant to this case contained in the typical Cigna benefit plan are

identical; thus, through out this Brief, reference is made to the A&L Industrial Services Plans (App. 620-87) and the Celestica Plan (App. 688-744), which are the typical Cigna-administered benefit plans."). In light of this concession by Encompass and its own reliance on the A&L SPD, the court **overrules** this objection by Encompass and considers whether the anti-assignment language in the A&L SPD cited by Cigna precludes and invalidates the assignments of benefits obtained by it.[6]

ERISA requires that SPDs be "written in a manner calculated to be understood by the average plan participant, and . . . be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." *Harris Methodist Fort Worth*, 426 F.3d at 334-35 (quoting 29 U.S.C. § 1022; and citing *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 981 (5th Cir. 1991) ("[T]he very purpose of having a summary plan description of the policy is to enable the average participant in the plan to understand readily the general features of the policy, precisely so that the average participant need *not* become expert in each and every one of the requirements, provisos, conditions, and qualifications of the policy and its legal terminology.")). "[A]ny ambiguities in the SPD must be resolved in the employee's favor, and the SPD must be read as a whole." *Harris Methodist Fort Worth*, 426 F.3d at 335 (citation omitted).

The provision in the A&L SPD that contains the anti-assignment language at issue provides in pertinent part as follows:

---

[6] Cigna contends that other SPDs also include anti-assignment language. The court, however, only considers whether the alleged anti-assignment language in the A&L SPD precludes Plaintiff's ERISA claims, as this is the only Plan cited by Cigna in the remarkably extensive summary judgment record, and the court is not required to scour or sift through the record to find evidence in support of a party's position. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F. 3d 455, 458 (5th Cir. 1998).

**Payment of Benefits**

**To Whom Payable**

All Medical Benefits are payable to you. However, at the option of CG [Cigna], all or any part of them may be paid directly to the person or institution on whose charge [the] claim is based.

Medical Benefits are not assignable unless agreed to by CG. CG may, at its option, make payment to you for the cost of any Covered expenses received by you or your Dependent from a Non-Participating Provider even if benefits have been assigned. When benefits are paid to you or your Dependent, you or your Dependent is responsible for reimbursing the Provider.

Defs.' Summ. J. Resp. App. 12; Pl.'s Summ. J. App. 662. The language in this provision does not unambiguously prohibit or preclude the assignment of benefits as Cigna contends. It instead provides that benefits are not assignable without Cigna's consent, and, even if assigned, Cigna may at its option pay benefits to the insured, who would then be responsible for reimbursing the healthcare provider that provided services. *See id.* Cigna, however, did not move for summary judgment on the ground that its consent was not obtained for the assignments at issue; nor does it contend that it is entitled to judgment on Encompass's benefits claims because it opted to pay the insureds rather than Encompass.

Moreover, the court agrees with Encompass that Cigna waived its right to contest Plaintiff's standing based on the inclusion of anti-assignment language in the plans. Whether a party has derivative standing under ERISA to assert a claim for benefits pursuant to an assignment goes to the issue of whether the party has prudential or statutory standing, not constitutional standing. "Unlike constitutional standing, prudential standing arguments may be waived" if not asserted timely. *Board of Miss. Levee Comm'rs v. EPA*, 674 F.3d 409, 417-18 (5th Cir. 2012); *Markle Interests, L.L.C. v.*

*United States Fish & Wildlife Serv.*, 827 F.3d 452, 462-64 & n.11 (5th Cir. 2016) (explaining that Article III standing is the "irreducible constitutional minimum," whereas statutory standing refers to whether a valid cause of action exists under the statute at issue and holding that the defendant forfeited any statutory standing argument by failing to raise it).  Consequently, the Fifth Circuit has held that a plan is precluded or estopped from raising the existence of an anti-assignment clause if it fails to assert and delays unreasonably in asserting the existence of the anti-assignment clause in response to a request for payment pursuant to an unambiguous assignment.  *Hermann Hosp. v. MEBA Med. and Benefits Plan* ("*Hermann II*"), 959 F.2d 569, 574-75 (5th Cir. 1992), *overruled on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012) (en banc) (per curiam).

As noted, Encompass contends, and Cigna does not dispute, that it never asserted the existence of anti-assignment language in the plans during the several years from approximately 2007 to 2011 that it processed the benefits claims for payment submitted by Encompass pursuant to assignments obtained from plan beneficiaries.  Moreover, Cigna waited an additional two years after this action was filed in September 2011 before asserting that Encompass lacked standing because of the existence of anti-assignment language in the plans.  The court, therefore, concludes that Cigna waived this argument or is estopped from asserting it as a result of its "protracted failure" in waiting several years to assert the existence of the anti-assignment language in the plans after Encompass requested payment for benefits pursuant to the assignments of benefits.

For all of these reasons, Encompass has Article III and prudential standing to pursue its claims for benefits and is entitled to judgment on the standing arguments raised by Cigna in its summary judgment motion and in response to Encompass's summary judgment motion.  Having

made this determination, the court need not address Encompass's other arguments regarding standing.

### B.      Plaintiff's ERISA Benefits Claims and Defendants' Exhaustion Defense

In their cross-motions for summary judgment and in response to Plaintiff's summary judgment motion, Cigna contends that it acted within its discretion in denying Encompass's claims for reimbursement under ERISA, and its denial of Encompass's claims is consistent with the plain language of the plans. Encompass agrees that an abuse of discretion standard applies but contends that Cigna's proffered interpretation of the plans regarding covered expenses is not supported by the plain language of the plans. Encompass, therefore, contends that Cigna abused its discretion in denying its claims for benefits under the ERISA-governed plans. Both parties accuse the other of straying impermissibly beyond the scope of the administrative record in addressing the coverage issue. Cigna contends that Encompass waived certain arguments or claims by failing to raise them during the administrative process. Encompass, on the other hand, contends that Cigna violated ERISA's procedural requirements and, as a result, prevented it from exhausting its administrative remedies. Cigna denies that it violated any procedural requirements under ERISA and contends that the only relief Encompass is entitled to, if any, is remand of its claims to Cigna's plan administrator for further consideration. Encompass opposes remand and contends that it is entitled to summary judgment on Cigna's affirmative defense of exhaustion of administrative remedies. Because the court determines, for the reasons that follow, that remand of Encompass's claims is necessary, it will deny without prejudice the parties' summary judgment motions with respect to Plaintiff's benefits claims under ERISA and Defendants' exhaustion defense.

## C.      Administrative Denial and Review of Plaintiff's ERISA Claims

The parties' summary judgment motions focus on the administrator's interpretation of the A&L SPD ("Plan"),[7] the types of providers covered by the Plan, and whether Cigna's administrator correctly determined that Encompass is not a covered provider under the Plan. The parties disagree, however, regarding the actual basis provided by the plan administrator for denying Encompass's claims, and they spend an inordinate amount of their briefing contending that the court cannot consider the other party's arguments because they exceed the scope of the administrator's actual basis for denying Encompass's claims or were not asserted during the administrative process.

### 1.      The Parties' Contentions

Cigna contends in this regard that, because the only issue Encompass raised during the administrative review process was whether its accreditation by the Joint Commission satisfied the licensure requirement to qualify as a facility, it is limited to that argument. Cigna, therefore, maintains that Encompass cannot challenge its benefits determinations based on the following new arguments that were not previously raised during the administrative process: "(1) it qualifies as an 'Other Health Care Facility' under the plans because it provided service to a physician's office, (2) there are no licensure requirements in the plans, and (3) the licenses of the nurses Encompass used in the performance of its services satisfy the licensure requirements under the plans." Defs.' Summ. J. Resp. 23.

---

[7] In their briefs, the parties again rely primarily on the language in the A&L Plan and cite to that Plan to support their respective positions. The parties' briefs also include some random references to and global arguments regarding the terms of other plans, but neither party ties those plans to any specific claims or contends that the other plans are representative of all plans and claims in this case. Accordingly, the court uses the A&L Plan in analyzing the parties' contentions regarding Cigna's denial and appellate review of Encompass's claims.

Encompass, on the other hand, asserts that its summary judgment licensure arguments are identical to the issues it addressed at the administrative level before filing suit. Alternatively, Encompass contends that Cigna should be estopped from arguing that the scope of the court's review is limited because any failure by it in previously raising the arguments it now asserts are attributable to Cigna's failure to substantially comply with ERISA's procedural requirements in violation of 29 U.S.C. § 1133. Encompass contends that the administrative process was thwarted because Cigna's lead Special Investigations Unit ("SIU") investigator Mary Ellen Cisar ("Cisar") placed a "permanent block" on all claims submitted by Encompass, which prevented its appeals from being decided under the plans' appeals protocol and violated ERISA's procedures. Pl.'s Summ. J. Br. 39-40.

Encompass asserts that, after Cisar placed a block on its provider identification number, none of its appeals were adjudicated under the normal protocol but instead were sent back to Cisar in the SIU, where each denial was upheld for lack of licensure. Encompass further asserts that it was prevented from developing its claims at the administrative stage that it has presented in support of its summary judgment motion because Cigna previously refused to provide information until being compelled to do so in this litigation. According to Encompass, Cigna did not explain the reasoning behind the purported plan license requirement until Cisar was deposed, and, as a result, Encompass was denied a meaningful opportunity to challenge or explore the bases for Cigna's claims determinations.

In addition, Plaintiff contends that, because the "only reason" provided by Cigna in its explanation of benefits ("EOBs") for denying Encompass's claims was—"Services rendered by unlicensed providers or entities are not covered under the benefit plans administered by and or underwritten by Cigna and its subsidiaries"— Cigna is precluded from raising the new grounds it

now asserts to justify the denial of the claims. Pl.'s Summ. J. Reply 9. Based on Fifth Circuit authority, Plaintiff asserts that Cigna's plan administrator can only defend its denial on the basis that it actually used to deny the claims in the first place and cannot rely on "post-hoc rationalizations" that were never made during the claims administration process. *Id.]* (quoting *Koehler*, 683 F.3d at 190 n.18; and *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 396 n.4 (5th Cir. 2006)). Plaintiff asserts that Cigna agrees that issues not raised during the administrative process cannot be raised in the district court but nevertheless argues at length regarding matters other than the actual basis for the administrator's denial of Encompass's claims. In this regard, Plaintiff contends:

> Notably, not a single denial received by Encompass indicated that [it] was ineligible to receive payment because it was not a facility. Nor did any denial state that Encompass was ineligible for reimbursement because it was not a provider type for whom services were covered by the health benefit plan. Nor did it claim that the services themselves were not covered under the plan. Cigna's only excuse for not paying Encompass's claims was that the plans did not cover charges made by unlicensed providers.

Pl.'s Summ. J. Reply 10 (footnote omitted). Plaintiff further asserts that Cigna's argument that it cannot recover a "facility fee" because it is "not a facility in the sense that it has no physical building" is "ludicrous" because the Plan indicates that "charges must be made by a facility for 'medical care and treatment,'" which according to Encompass, is the type of service it provided and for which it billed Cigna. *Id.* (footnote omitted).

Cigna disagrees and contends that it complied with all relevant procedural regulations. Defs.' Summ. J. Resp. 23; Defs.' Summ. J. Reply 21. Cigna asserts that it "repeatedly demonstrated" in its "benefits determination letters to Encompass . . . that Encompass was not licensed and did not satisfy the requirements to qualify as a Free-Standing Surgical Facility or any other facility under the plans," but Encompass never contested or "appealed any adverse benefits determination to any

appeals committee." Defs.' Summ. J. Resp. 23 (citing Defs.' Summ. J. Resp. App. 231-241).

According to Cigna, SIU flagged Encompass's claims for closer review, which merely prevented the

claims from being automatically processed electronically. Cigna contends that the SIU file even

noted that the personnel reviewing Encompass's claims should consult the relevant plans to ensure

that SIU's recommendation was consistent with the terms of the plans. Regardless, Defendants

contend that "Encompass has no right to complain about or seek relief based on any alleged

procedural irregularities" because the court "previously held that the assignments Encompass

received do not confer to Encompass the right to pursue claims for breach of fiduciary duty or for

violations of ERISA's procedural regulations."[8] Defs.' Summ. J. Reply 21.

### 2.     ERISA's Procedural Requirements

ERISA's procedural requirements for processing administrative appeals "are set forth in [29

U.S.C.] § 1133 of ERISA and in the Department of Labor regulations promulgated pursuant to that

section." *Schadler v. Anthem Life Ins. Co.*, 147 F.3d 388, 393 (5th Cir. 1998). Under section 1133,

every employee benefit plan must:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim
> for benefits under the plan has been denied, setting forth the specific reasons for such
> denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has
> been denied for a full and fair review by the appropriate named fiduciary of the
> decision denying the claim.

*Id.* (quoting 29 U.S.C. § 1133). Regarding section 1133's notice requirement, the Department of

Labor Regulations further require that an ERISA claim denial be set forth in a manner that can be

---

[8] Because Encompass does not seek damages or substantive relief as a result of its contention that Cigna violated ERISA's procedural regulations, the court's decision to remand this action to the plan administrator as a result of those procedural violations is not inconsistent with its prior opinion.

understood by the claimant and include: "(i) [t]he specific reason or reasons for the adverse determination, (ii) [r]eference to the specific plan provisions on which the decision is based, (iii) [a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." 29 C.F.R. § 2560.503–1(g). The Fifth Circuit has interpreted ERISA's notice procedures as requiring the administrator to not only disclose the specific ground or grounds for the initial denial of a claim for benefits, but also to limit subsequent review to those specific grounds. *See Robinson*, 443 F.3d at 393. Disclosure of the specific basis for the administrator's decision "is necessary so that beneficiaries can adequately prepare for any further administrative review" and "ensures the 'meaningful review' contemplated by subsection (2) [of § 1133]." *Id.* (quoting *Schadler*, 147 F.3d at 394).

### 3. The Plan's Relevant Provisions

To put Cigna's original denial of benefits and subsequent grounds for upholding the denials in context, the court sets out the relevant Plan language. The Plan defines the expenses covered under the Plan in terms of services or supplies charged by certain types of providers:

> The term Covered Expense means the expenses incurred by or on behalf of a person for the charges listed below if they are incurred after he becomes insured for these benefits. Expenses incurred for such charges are considered Covered Expenses to the extent that the services or supplies provided are recommended by a Physician, and are Medically Necessary for the care and treatment of an Injury or a Sickness, as determined by CG [Cigna]. . . .

**Covered Expenses**

- **charges made by a Hospital, on its own behalf**, for Bed and Board and other Necessary Services and Supplies; except that for any day of Hospital Confinement, Covered Expenses will not include that portion of charges for Bed and Board which is more than the Bed and Board Limit shown in The Schedule.

- **charges for licensed ambulance service** to or from the nearest Hospital . . .

- **charges made by a Hospital, on its own behalf**, for medical care and treatment received as an outpatient.

- **charges made by a Free-Standing Surgical Facility, on its own behalf** for medical care and treatment.

- **charges made on its own behalf, by an Other Health Care Facility**, including a Skilled Nursing Facility, a Rehabilitation Hospital or a subacute facility for medical care and treatment; except that for any day of Other Health Care Facility confinement, Covered Expenses will not include that portion of charges which are in excess of the Other Health Care Facility Daily Limit shown in The Schedule.

- **charges made for Emergency Services** and Urgent Care.

- **charges made by a Physician or a Psychologist for professional services**.

- **charges made by a Nurse**, other than a member of your family or your Dependent's family, **for professional nursing service**.

Pl.'s Summ. J. App. 644 (emphasis added). The Plan defines "Hospital" in pertinent part as "an institution licensed as a hospital, which : (a) maintains, on the premises, all facilities necessary for medical and surgical treatment . . . [or] a Free-standing Surgical Facility." *Id.* at 682. The term "Free-Standing Surgical Facility" is defined as "an institution" that satisfies all of the following requirements:

- it has a medical staff of physicians, Nurses and licensed anesthesiologists;

- it maintains at least two operating rooms and one recovery room;

. . . .

- it has agreements with Hospitals for immediate acceptance of patients who need Hospital Confinement on an inpatient basis; and

- it is licensed in accordance with the laws of the appropriate legally authorized agency.

*Id.* at 681. "Other Health Care Facility" is defined as "a facility other than a Hospital or hospice facility. Examples of Other Health Care Facilities include, but are not limited to, licensed skilled nursing facilities, rehabilitation Hospitals and subacute facilities." *Id.* at 684. The Plan states that the term "Nurse" means "a Registered Graduate Nurse, a Licensed Practical Nurse or a Licensed Vocational Nurse who has the right to use the abbreviation 'R.N.,' 'L.P.N.' or 'L.V.N,'" and "Physician" means "a licensed medical practitioner who is practicing within the scope of his license and who is licensed to prescribe and administer drugs or to perform surgery." *Id.* at 684-85. The Plan's summary of "Benefit Highlights" states that "Physician's Services" include "Surgery Performed In the Physician's Office." *Id.* at 633. The summary of "Benefit Highlights" distinguishes between "Professional Services," also referred to as "Physician's Services," and "Facility Services." *Id.* at 633-642. According to the "Benefit Highlights," "Outpatient Professional Services" include medical services provided by a surgeon, anesthesiologist, radiologist, and pathologist, whereas "Outpatient Facility Services" include services in the form of an "Operating Room, Recovery room, Procedures Room, Treatment Room, and Observation Room." *Id.* at 634.

### 4. Noncompliance with ERISA's Procedures

As previously noted, although Encompass's claims for benefits under ERISA were originally denied by Cigna for a number of reasons, most of the claims were denied either because "[s]ervices rendered by unlicenced providers or entities are not covered under the benefit plans administered by and or underwritten by Cigna"; or "[y]our plan does not permit payment for this type of provider." *See, e.g.,* Pl.'s Summ. J. App. 3914, 3950. In addition, a small number of claims were denied

because "benefits are not payable for this service except when provided by a participating provider" or "covered expenses for this service are limited to the maximum reimbursable charge as outline in your plan" so "the provider may bill you for the amount not covered." *Id.* at 3038, 3062. None of the foregoing reasons for denying Encompass's claims is particularly specific; nothing in the summary judgment record indicates that the original grounds for denial in the EOBs were accompanied by reference to the specific plan provisions on which the decisions were based; and, the court found only one instance in which Cigna requested additional material or information from Encompass in processing the claims. Thus, Cigna's EOBs did not comply with § 1133(1) or § 2560.503–1(g).

Moreover, while Cigna asserts that it "repeatedly demonstrated" in its "benefits determination letters to Encompass . . . that Encompass was not licensed and did not satisfy the requirements to qualify as a Free-Standing Surgical Facility or any other facility under the plans," the only evidence in the summary judgment record regarding the administrator's review of the hundreds of claim denials is five review letters from Cigna to Encompass between August 2009 and February 2011 upholding prior determinations. Defs.' Summ. J. Resp. 23 (citing Defs.' Summ. J. Resp. App. 231-241).

Two of these review letters, dated March 2010 and February 2011, merely reiterate in conclusory fashion, without explanation, that the claim denials were being upheld because Encompass is not a licensed provider and Cigna's plans only provide benefits for licensed providers. The scant information in these review letters is no more helpful than the EOBs at explaining the reasoning behind the denials as they pertain to Encompass and the plan terms. *See Schadler*, 147 F.3d at 394 (explaining that, in determining whether to pay or deny benefits, a plan administrator

must determine the facts underlying the claim for benefits and whether those facts constitute a claim covered by the terms of the plan and to be honored under the terms of the plan, and "[t]he requirement that the administrator must give reasons for its benefits decision applies" to both of these determinations).

Two of the five review letters relied on by Cigna, which are dated March and June 2010, state that they represent the "final step of the administrative review process" or the "final internal level of appeal." Defs.' Summ. J. Resp. App. 231, 241. As a result, any information provided regarding Cigna's basis for denial in these letters would not have assisted Encompass in appealing the denials of its claims prior to filing suit. These review letters also fail to provide adequate notice of Cigna's reasons for upholding the denials for other reasons. As noted, the March 2010 letter includes Cigna's generic nonlicensure basis for upholding the denial of benefits. The June 2010 letter states that the denial is being upheld because: (1) services were not rendered as billed; (2) "Encompass . . . is not a licensed healthcare provider"; and (3) "under the titles 'Free-Standing Surgical Facility, Other Health Care Facility, and Physician' benefits are limited" to the definitions of those terms in the plan at issue. Defs.' Summ. J. Resp. App. 240. The first of these reasons appears to be an entirely new basis for denial that violates subsection (2) of § 1133; the second reason is unhelpful because, like Cigna's initial EOBs, it does not explain the basis in the plan provisions from which this requirement is derived; and the third reason simply sets forth the plan definitions for Free-Standing Surgical Facility ("FSSF"), Other Health Care Facility ("OHCF"), and Physician without explaining why Encompass does not qualify and cannot recover benefits for services provided by an FSSF, OHCF, or Physician.

The two remaining review letters, dated August 2009 and February 2011, pertain to first-level appeals or reviews by Cigna. They contain more information regarding Cigna's decision to uphold the original denials of benefits but similarly fail to provide Encompass with adequate notice of Cigna's grounds for upholding the denials. The August 2009 letter states, without explanation, that services provided by a licensed provider that are not within the scope of the provider's license are not covered under the relevant plan. The letter also states that the denial of benefits is being upheld based on the definition of FSSF. The letter includes the definition of FSSF but does not explain the import of this definition as applied to Encompass in Cigna's decision to uphold the denial of benefits. In other words, it does not explain why Encompass does not qualify as an FSSF; nor does it explain why consideration was only given to whether Encompass qualified as an FSSF, as opposed to other types of providers covered under the Plan.

The February 2011 review letter states that the relevant plan covers "Physician's Services including Surgery Performed in the Physician's Office, Outpatient Professional Services including the services of a Surgeon, Radiologist, Pathologist and Anesthesiologist and Outpatient Facility Services including Operating Room, Recovery Room, Procedures Room, Treatment Room and Observation Room." *Id.* at 234. The letter goes on to state that, according to the documentation provided by Encompass for purposes of the appeal, Encompass "provides doctors with everything needed to perform surgery in the office including an OR, ACLS Certified Nurse and the scheduling of a Board Certified Anesthesiologist," and "[w]hile Encompass . . . coordinates the services of physicians, [it] does not appear to be a physician group nor does [it] meet the requirements of a physician as outlined by the benefit plan," which defines Physician as a licensed medical practitioner who is licensed to prescribe and administer drugs or to perform surgery or someone who is operating

within the scope of his or her license and performing a service for which benefits are provided under the plan when performed. *Id.* In addition, the 2011 letter states, without explanation, that "the *services provided by* Encompass . . . would not fall under the plan's benefits for hospital or Free-Standing Surgical Facility Services" or the SPDs definition of "Other Health Care Professional." *Id.* (emphasis added). Thus, like the August 2009 review letter, the 2011 letters includes the definitions of certain providers covered under the Plan but does not explain why Encompass does not satisfy the definitions of the providers referenced.

Moreover, it is unclear from the summary judgment record whether this review was of a denial of benefits based on licensure, provider type, or another ground. If for provider type, it provides more information than the initial EOB but appears to conflate the difference between covered services and covered providers and fails to explain why services can be covered under the plan but still not be recoverable unless charged by a covered entity on its own behalf. *See* Pl.'s Summ. J. App. 644 (defining "Covered Expenses"). Additionally, the letter acknowledges that Encompass's services included services by certified, licensed nurses but does not explain why these or other professional services performed by a physician or nurse are only recoverable under the plan by a physician's group or a physician rather than a company like Encompass. Finally, while slightly more detailed than the Cigna's EOBs and other review letters, this single letter that issued in February 2011, two years after Cigna began denying Encompass's claims, could not have put Encompass on notice of the bases for all of Cigna's claim denials that preceded this letter. Likewise, because the handful of review letters relied on by Cigna deal only with five claims, it cannot be reasonably inferred that the grounds stated in these letters provided notice of Cigna's reasons for denying hundreds of other claims and appeals submitted by Encompass. For all of these reasons, the

court concludes that Cigna's original claims denials and subsequent reviews of those denials did not comply with ERISA's procedural notice requirements.

Mere noncompliance with ERISA's procedures, however, is not the standard; rather, challenges regarding ERISA procedure compliance are evaluated under a "substantial noncompliance standard." *Robinson*, 443 F.3d at 392. Under this standard, "'technical noncompliance' with ERISA procedures 'will be excused' so long as the purpose of section 1133 has been fulfilled." *Id.* at 393 (citation omitted). As previously noted, the purpose of section 1133 is "to afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial." *Lafleur v. Louisiana Health Serv. and Indem. Co.*, 563 F.3d 148, 154 (2009) (citation omitted). Review of a benefits denial is not meaningful if it "afford[s] deference to the initial adverse benefit determination" and is "conducted by the same person who made the initial determination." *Id.* (citing 29 C.F.R. § 2560.503–1(h)(3)(ii)).[9] "The substantial compliance test also considers all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances." *Lafleur*, 563 F.3d at 154 (citation and internal quotation marks omitted). "Substantial compliance requires 'meaningful dialogue' between the beneficiary and administrator." *Id.* (citation omitted).

Taken together, Cigna's original denial of Encompass's claims and subsequent review of its claims denials cannot be characterized as mere technical noncompliance with ERISA's notice procedures. None of the EOBs adequately disclosed the specific basis for the administrator's

---

[9] 29 C.F.R. § 2560.503–1(h)(3)(ii) states: "The claims procedures of a group health plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless . . . the claims procedures— . . . (ii) Provide for a review that does not afford deference to the initial adverse benefit determination and that is conducted by an appropriate named fiduciary of the plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal, nor the subordinate of such individual."

decision or referenced the specific plan provisions on which the decisions were based, or advised Plaintiff what, if any, additional materials or information was needed about Encompass's business or services to process its claims and why such information was necessary. 29 C.F.R. § 2560.503–1(g)(i)-(iii). As a result, most of the arguments raised by the parties in this case regarding Encompass's services and interpretation of the Plan's terms were not previously addressed or sufficiently developed during the administrative process and instead are being presented to the court to resolve in the first instance, which defeats ERISA's purpose of "streamlining and shortening the timeframe for disposing of claims," *Schadler*, 147 F.3d at 396, and this Circuit's "policy of encouraging the parties to make a serious effort to resolve their dispute at the administrator's level before filing suit in district court." *Robinson*, 443 F.3d at 393 (citing *Vega v. National Life Ins. Servs., Inc.*, 188 F.3d 287, 300 (5th Cir. 1999) (en banc)).

For example, one of the issues of contention in this case is whether Encompass can recover for the nursing services it provided during the in-office surgeries. Cigna contends that Encompass never sought recovery for nursing services or advised that its nurses were licensed during the administrative process and should be barred from arguing so now, but there is no indication from the administrative record that Cigna ever advised Encompass what additional materials or information was needed. While the failure to reference relevant plan provisions or advise a claimant regarding additional information needed to process a claim may not be important in every case, Cigna's failure to do so in this case goes to the heart of the parties' arguments of whether Encompass fits any of the definitions for providers covered under the Plan.

The administrative record indicates that there was some internal discussion within Cigna as to whether the type of services provided by Encompass and similar providers are covered under the

plans, but other than the three review letters relied on by Cigna, there was no meaningful communication or dialogue between Cigna and Encompass as to the reasons Encompass does or does not fit any of the definitions for providers covered under the Plan, and that lack of communication can be traced to SIU's investigation, which effectively stymied Cigna's administration of Encompass's claims and the communication between Cigna and Encompass during the administrative process.

Starting in 2009 after Encompass was "flagged," Cigna required all claims submitted by Encompass be sent to SIU for processing and denial. Pl.'s Summ. J. App. 488. Although SIU did not process Encompass's appeals of the original claim denials, all of Encompass's appeals were routed through SIU for a recommendation, and in every instance, SIU recommended that the denials be upheld based on Cisar's early determination, after reviewing Encompass's website, that Encompass did not qualify as a covered provider under the plans because it was not a licensed provider. *See, e.g.*, Pl.'s Summ. J. App. 353. Cigna contends, based on Cisar's deposition, that "Cigna's claims processors and members of Cigna's National Appeals Organization made the ultimate determination on whether claims submitted by Encompass were eligible for reimbursement" and were free to disregard SIU's recommendation to uphold the denial of all of Encompass's claims. Defs.' Summ. J. Resp. 6. The administrative record, however, demonstrates that deference was effectively given to all of SIU's original denials and recommendations to summarily uphold the denials with little discussion within Cigna or with Encompass, and without considering the appeal record or information submitted by Encompass.[10]

---

[10] Most of the time, Cisar used the form response, "SIU recommends you maintain the denial as this is not a licensed provider," or something similar without elaborating in responding to requests for recommendations regarding Encompass's appeals. *Id.* at 393. In October 2010, the following e-mail exchange between a Cigna appeal processor and Cisar took place, which highlights the lack of consideration given by Cigna in reviewing its original claim denials:

Even when Cigna's appeals processors raised the issue of whether Encompass qualified as a covered provider under the terms of the plans, Cisar discouraged the use of language in the decision review letters that referenced plan definitions and requirements for providers and instead urged that the grounds for upholding the denial communicated to Encompass be limited to the language contained in Cigna Code RNC 1248—"This provider is not licensed and therefore not eligible for coverage." *See id.* at 275. Cisar also discouraged other forms of communication between Cigna and Encompass during the administrative claim review process. For example, when asked for contact information that a claim processor could use to notify Encompass of Cigna's decision to uphold its original denial of a claim based on "unlicensed provider," Cisar rebuffed: "I don't understand the question. A name and address for what purpose?" *Id.* at 245. Similarly, in December 2009, after Encompass inquired about the status of an appeal and Cigna customer service specialist Ronda Murrow asked whether SIU "had contacted this provider [Encompass] and provide[d] [the] status on the investigation," Cisar responded in a similarly dismissive manner: "Ronda—I am not sure where the delay on this issue lies[,] but[] can you have the claim denied[?]

---

Claim processor: "Appeal Image#10260300072542. Claim denied correctly prior to SIU review."

Cisar: "SIU recommends you maintain the denial as this provider is a known fee-forgiver."

Claim processor: "Mary Ellen, [t]his provider's claim denial is based on being an unlicensed provider, not fee forgiving. Should I uphold on that basis?"

Cisar: "**[O]ops—I inserted the wrong reason**. Please maintain the denial as Encompass Office Solutions is not a licensed provider."

*Id.* at 438 (emphasis added); *see also id.* at 244 (After being notified regarding an appeal by Encompass and receipt of "records and appeal letter," Cisar responded a short time later: "No need to send the documents. Encompass is not a licensed provider and we[,] therefore, we [sic] should maintain the denial."). The deference given to SIU's appeals recommendations is reflected in the following e-mail exchange: Senior Appeals Processor: "I have gotten a response to all siu items I sent last Friday except for this one. **Can you send me a quick response so I can close**." Cisar: "SIU recommends you maintain the denial as Encompass Office Solutions is not a <u>licensed</u> healthcare provider." *Id.* at 303 (emphasis added).

Encompass Office Solutions is not a healthcare provider recognized by our plans. They supply equipment and personnel to medical offices." *Id.* at 233.

Consequently, the court concludes for all of the aforementioned reasons that Cigna did not substantially comply with ERISA's procedural requirements because the manner in which Cigna processed Encompass's claims and appeals did not give Encompass sufficient notice of the specific reasons the claims were originally denied and did not provide Encompass with a reasonable opportunity to have a full and fair review of the claim denials. *See* 29 U.S.C. § 1133.

### 5.    Remedy

Defendants deny that Plaintiff is entitled to recover on its ERISA claims but contend that, to the extent Plaintiff is entitled to any relief, the appropriate remedy is to remand Encompass's claims to the plan administrator for further consideration:

> In spite of the requirements of ERISA and controlling Fifth Circuit precedent, Encompass has raised issues and presented evidence in support of its claims that were not presented to Cigna during the administrative review of Encompass's claims. In addition, Encompass has asserted that Cigna violated certain of ERISA's procedural requirements. Cigna disputes that Encompass may rely on any arguments and evidence that were not presented to Cigna prior to the filing of this action. Cigna also disputes that Encompass's arguments have any merit whatsoever.
>
> To the extent that the Court determines Encompass has even a colorable claim to benefits, which Cigna denies, the appropriate remedy under the circumstances would be to remand Encompass's claims to Cigna so that Cigna can exercise the fiduciary discretion Encompass acknowledges Cigna has been granted under the plans at issue in this case.

Defs.' Summ. J. Resp. 45.

Plaintiff opposes remand, contending that it ignores Fifth Circuit precedent that remand is appropriate only in "special circumstances." Pl.'s Summ. J. Reply 23 (citing *Vega*, 188 F.3d at 302 n.13). Plaintiff contends that Cigna had the opportunity to exercise its discretion in deciding over 800 claims but instead summarily denied the claims and Encompass's appeals. Plaintiff

characterizes Cigna's suggestion regarding remand as "a transparent attempt to allow it to raise defenses to payment that it improperly attempts to raise now." Pl.'s Summ. J. Reply 23. Plaintiff contends that Cigna's argument regarding remand also ignores that "a significant number of claims in this case are not governed by ERISA, and thus must be resolved by this Court under common law." *Id.* Plaintiff asserts that remanding its ERISA claims while deciding its claims under state law would delay resolution of the litigation and likely lead to inconsistent results. Plaintiff, therefore, argues that the "better, and more efficient, course is for the Court to rule on the merits whether Cigna improperly denied Encompass's claims for lack of a license that does not exist and that its plans do not require, especially given Cigna's repeated abuses of the administrative process to date." *Id.*

"Remand to the plan administrator for full and fair review is usually the appropriate remedy when the administrator fails to substantially comply with the procedural requirements of ERISA." *Lafleur*, 563 F.3d at 157. "When the procedural violations are non-flagrant, remand is typically preferred over a substantive remedy to which the claimant might not otherwise be entitled under the terms of the plan." *Id.* at 157-58. Remand is also an appropriate remedy when "the administrative record reflects, at minimum, a colorable claim for upholding the denial of benefits." *Id.* at 158. "A remand for further action is unnecessary only if the evidence clearly shows that the administrator's actions were arbitrary and capricious, or the case is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground." *Id.* (citation omitted). The "paradigmatic example of flagrant procedural violations" is a case in which the defendant "fail[s] to comply with virtually every applicable mandate of ERISA," including the failure to have an SPD and claims procedure, and failing to inform participants in writing of anything. *Id.* (quoting *Blau*

*v. Del Monte* Corp., 748 F.2d 1348, 1353 (9th Cir. 1985), *abrogated on other grounds by Dytrt v. Mountain States Tel. & Tel. Co.*, 921 F.2d 889, 894 n.4 (9th Cir. 1990)).

Cigna's administrative process did not substantially comply with the procedural requirements of ERISA, but the procedural violations were not flagrant in comparison to those in *Blau*. *See Lafleur*, 563 F.3d at 158. Instead, this case presents "the more ordinary situation" in which the plan administrator exercised discretion but, in doing so, made "procedural errors." *Id.* at 159. Moreover, there is some evidence in the record that Encompass refused, at least on one occasion, to provide information in the form of medical records when requested by Cigna, and, as a result, the claim was denied. *See* Pl.'s Summ. J. App. 233. Thus, Plaintiff contributed to the situation at least in part and is not entirely blameless. This fact and Cigna's technical procedural errors weigh in favor of remand. Moreover, the Fifth Circuit has cautioned courts against being "seduced into making a decision [that] belongs to the plan administrator in the first instance." *Schadler*, 147 F.3d at 398 (quoting *Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1013-15 (9th Cir.1997) (en banc), in which the Ninth Circuit remanded the case to the plan administrator that had not interpreted the provision at issue in the first instance because it had found for the defendants based on an incorrect, alternative ground); *see also Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1309 (5th Cir. 1994) ("Congress intended plan fiduciaries, not the federal courts, to have primary responsibility for claims processing.").

Further, the circumstances in this case do not support a finding that Defendants waived the right to argue that denial of the claims was warranted because Encompass does not fit the provider definitions in the Plan. While Encompass contends, based on Cisar's deposition testimony, that its claims were denied solely because of a licensure requirement under the plans, and that Cigna's provider arguments based on interpretation of the Plan constitute "new grounds for denial" in

violation of section 1133, Cisar's deposition testimony is outside the administrative record and cannot be considered by the court.

Moreover, Plaintiff's contention does not accurately reflect Cisar's deposition testimony or the administrative record. In her deposition, when asked if the majority of Encompass's claims was denied on the basis that it was not a licensed healthcare provider, Cisar explained that, while the final decision to deny Encompass's claims was made because it was not a licensed provider, this decision was reached as a result of reviewing the plans to determine whether Encompass, by virtue of its business model and the services it provided, was entitled to recover benefits under the plans. Pl.'s Summ. J. App. 15, 30, 32. Cisar testified that SIU ultimately determined that Encompass was not a covered provider under the plans. *Id.* at 15.

Additionally, Encompass's lack of a license was not the sole reason provided in the EOBs; rather, as previously noted, a large number of claims were denied because "Your plan does not permit payment for this type of provider" or the services provided by Encompass were only payable under the plans when provided by a participating or network provider. *See, e.g.*, *id.* at 3213-16. Although an equally large number of EOBs state that Encompass's claims were denied because "[s]ervices rendered by unlicenced providers or entities are not covered under the benefit plans," it is apparent from SIU's investigative file that there was discussion within Cigna during the administrative phase as to whether Encompass qualified as a provider under the plans, including whether it qualified as a "facility." *See, e.g.*, Pl.'s Summ. J. Resp. 254, 275, 353, 486-87, 554. In some of these discussions, Cisar and others expressed the opinion that Encompass was not a facility or any other type of provider recognized by the plans. *See id.* at 233, 234, 239, 254, 353, 366, 486-87, 554; *see also* Defs.' Summ. J. Resp. App. 406-411 (Plaintiff's first level appeals of claims that

were "originally denied as 'Your plan does not permit payment for this type of provider.'"). That the issue arose during the claim administration process is also apparent from the following clarification by Plaintiff: "WE ARE NOT A FACILITY OR ASC AND SHOULD NOT BE PROCESSED AS SUCH."[11] *See id.* at 526.

Cisar acknowledged that denying Encompass's claims based on Cigna's RNC 031 code—"Your plan does not permit payment for this type of provider"—was "not incorrect" but expressed her preference that the claims instead be denied using the language in the RNC 1248 code regarding unlicensed providers. *Id.* at 275, 267, 268, 457. Further, while Cisar frequently recommended that denials be upheld based on her determination that Encompass was an unlicensed provider, she also recommended upholding denials in many instances on the basis that Encompass was not a licensed "facility" provider. *Id.* at 412-25, 433-36, 443-56, 462-67, 470-72. In a large number of recommendations, Cisar and others in SIU also explained that Encompass was not a recognized provider under the plans, licensed or otherwise, because it supplies medical equipment, supplies, and personnel physicians' offices.[12]

Thus, while many EOBs state that Encompass's claims were denied because unlicensed providers are not covered under the plans, implicit in this reasoning and the other claim denials was that Encompass was not a type of provider that was covered under the plans. As a result, this is not a clear-cut situation in which the administrator asserted one reason for denying claims at the

---

[11] "ASC" refers to ambulatory surgical center.

[12] *See id.* at 233 ("Encompass . . . is not a healthcare provider recognized by our plans. They supply equipment and personnel to medical offices."); *id* at 173 ("Encompass is not a licensed healthcare provider. They are [a] supplier of medical supplies and equipment to physicians' offices."); *id.* at 544 ("[Encompass] is not a healthcare provider. They are a company that supplies equipment to physician[s'] offices."); *see also id.* at 168, 174-76 178, 180, 233, 234, 239, 254, 261, 283, 284, 333, 353, 469, 489, 491, 554 (same).

administrative level and counsel subsequently attempted to bolster the administrator's position before the district court with an entirely new reason for denying the claims. Instead, this case represents a situation in which the original denials and reviews of those denials did not adequately explain the underlying reasons for the denials and the decisions to uphold the denials that were discussed internally within Cigna during the claim administration process. *See Schadler*, 147 F.3d at 398.

In addition to the foregoing reasons, the court concludes that remand is appropriate because this case is not so "clear cut" that it would be unreasonable for Cigna's plan administrator to deny Encompass's claims for benefits "on any ground," and "the administrative record reflects, at minimum, a colorable claim for upholding [Cigna's] denial of benefits" based on its determination that Encompass is not a type of provider recognized under the Plan. *Lafleur*, 563 F.3d at 158. Remanding Plaintiff's ERISA's claims to Cigna's plan administrator for further consideration also promotes this Circuit's "policy of encouraging the parties to make a serious effort to resolve their dispute at the administrator's level before filing suit in district court." *Robinson*, 443 F.3d at 393 (citing *Vega*, 188 F.3d at 300). Contrary to Plaintiff's assertion, remanding its ERISA claims will not delay resolution of its claims for benefits under state law or lead to inconsistent results because the state law claims are governed by and will be decided under an entirely different legal standard than the ERISA claims. Further, this opinion disposes of all the parties' claims and requests for relief under state law, except for Plaintiff's quantum meruit claim, for which Plaintiff could have but did not move for summary judgment.

Accordingly, for the reasons stated, the court will deny without prejudice the parties' summary judgment motions with respect to Plaintiff's ERISA claims for benefits and Defendants'

exhaustion defense and **remands** Plaintiff's ERISA benefits claims to Cigna's plan administrator for a full and fair review of Encompass's claims and Cigna's adverse benefit determinations. This review may include additional investigation and supplementation of the administrative record by the parties. Further, because it appears that the involvement of Cigna's SIU previously hindered the administration of Encompass's claims, the court **directs** Cigna to reassess whether SIU's involvement on remand will facilitate a full and fair review of Encompass's claims and Cigna's adverse benefit determinations. Cigna shall furnish Encompass with a formal written decision or decisions and notify the court of the results within **180 days** of this order or at an earlier time if the review of Encompass's claims is completed before the expiration of the 180 days.

### D.     Plaintiff's State Law Claims (Breach of Contract and Quantum Meruit)

Plaintiff moved for summary judgment on its claims for benefits that are governed by state law rather than ERISA. Plaintiff contends that it is entitled to judgment on its claim for breach of contract under Texas law. Cigna also moved for summary judgment on Plaintiff's contact and quantum meruit claims. For the reasons that follow, the court determines that a genuine dispute of material fact exists as to Plaintiff's quantum meruit claim but not its breach of contract claim.

### 1.     Breach of Contract

In its motion and response to Cigna's motion, Plaintiff contends that all of the elements for breach of contract are satisfied because it is undisputed that: (1) "the (non-ERISA) benefits plans insured by Cigna are a valid and enforceable contract[s] that require Cigna, as insurer, to pay for its members' covered expenses"; (2) Encompass performed under the insurance policies; and (3) Cigna breached the contracts by failing to pay Encompass for the services it provided pursuant to the assignments of benefits obtained from insureds. Plaintiff contends that, although Cigna denied its

claims for benefits for lack of a license, it routinely contracts with and pays unlicensed providers that perform the same type of services. Plaintiff further asserts that neither Texas law nor the plain language of the policies require it to be licensed, and any such basis for denying Encompass's claims must be strictly construed against Cigna.

Cigna contends in its motion that it is entitled to judgment on Plaintiff's contract claim under Texas law because its denial of Encompass's claims was not a breach of the policies' unambiguous language. Cigna contends Encompass's services are not "Covered Expenses" under the policies because Encompass does not qualify as a covered provider under the policies. In addition, Cigna contends that the policies exclude coverage for the charges Encompass submitted, irrespective of the nature of the services rendered, because Encompass did not hold the patients responsible for any portion of the charges billed to Cigna.

The elements of a breach of contract claim under Texas law are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citation omitted). The court determines as a matter of law what the contract requires of the parties. *See Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.] 1996, writ denied). When the terms of a contract are clear and unambiguous, and the facts concerning breach or performance are undisputed or conclusively established, the issue of whether the facts show performance or breach is also decided as a matter of law. *Id.*

"The interpretation of a contract—including whether the contract is ambiguous—is a question of law." *McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.*, 736 F.3d 375, 377 (5th

Cir. 2013); *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). A court's primary concern in interpreting a contract under Texas law is to ascertain the parties' intent. *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Texas courts avoid unreasonable constructions and "construe contracts from a utilitarian standpoint, bearing in mind the particular business activity." *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005). "The language in an agreement is to be given its plain grammatical meaning unless to do so would defeat the parties' intent." *DeWitt Cty. Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999). If a contract "is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." *Coker*, 650 S.W.2d at 393. If, on the other hand, the contract language is "susceptible to two or more reasonable interpretations," an ambiguity exists. *Enterprise Leasing Co. v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004). Disagreement by the parties, however, over the meaning of an unambiguous contract does not turn an otherwise unambiguous contract into one that is ambiguous. *McLane Foodservice, Inc.*, 736 F.3d at 378 ("Ambiguity does not arise because of a 'simple lack of clarity,' or because the parties proffer different interpretations of the contract."). Insurance policies and plans are interpreted according to the same rules of contract construction as other contracts, except that an insurance policy is "construed strictly against the insurer and liberally in favor of the insured" when the terms of the policy are ambiguous or when dealing with exceptions and words of limitation. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665-66 (Tex. 1987).

The court concludes that the Plan[13] at issue is unambiguous, and the charges by Encompass for services, equipment, and supplies do not qualify as "Covered Expenses" as that term is defined because Encompass does not fit the definition of any provider covered under the plans. As previously noted, the Plan defines "Covered Expenses" in terms of services provided by the listed types of providers that include hospitals, facilities, and individual health care professionals such as physicians and nurses. It is undisputed that Encompass is not a hospital, licensed ambulance service, nurse, or physician. While it provides nursing services, it does not qualify as an "individual" health care professional as that term is defined because it is a company, and it is undisputed that the claims it submitted to Cigna were for the facility component, not the professional component of the services provided.

Further, Encompass concedes it is not an FSSF. Encompass asserts that it qualifies as an OHCF, but it previously admitted that it is not a facility of any kind and advised Cigna in writing that it should not be treated as a facility for purposes of processing its claims.[14] Defs.' Summ. J. Resp. App. 526. As noted, Plaintiff takes issue with Cigna's argument that it cannot recover a "facility fee" merely because it is "not a facility in the sense that it has no physical building." Pl.'s Summ. J. Reply 10. Encompass contends that this argument is "ludicrous" because it provided the services in a physician's office, and the Plan indicates that "charges must be made by a facility for 'medical care and treatment,'" which according to Encompass, is the type of service it provided and for which

---

[13] The parties rely on the same representative "Plan" when arguing about Plaintiff's breach of contract claim under Texas law. Accordingly, the court's analysis is based on the same "Plan," although it may sometimes use the term "plans."

[14] These and other arguments discussed in this section were not specifically raised by the parties' with respect to Plaintiff's breach of contract claim, but the parties state that Plaintiff's contract claim fails or succeeds for the same reasons that Plaintiff's ERISA claims fail or succeed. Accordingly, the court addresses the parties' arguments as to whether Encompass qualifies as a covered provider under the plans for purposes of its breach of contract claim.

it billed Cigna.  *Id.* (footnote omitted).  Plaintiff similarly argues that the services it provided are covered under the Plan as "Outpatient Facility Services" or because the Benefit Highlight section of the Plan states that surgery performed in the physician's office is covered.

These arguments, however, miss the mark because Covered Services are defined under the Plan, not only in terms of the types of medical services provided, but also in terms of the types of healthcare providers who provided the services.  Consequently, under the Plan as written, a service provided by one type of healthcare provider may be covered while the same service by another type of healthcare provider is not.  Additionally, the Plan states that charges by a hospital, FSSF, and OHCF must be made by the hospital or facility on its own behalf.  Thus, even assuming, as Plaintiff contends, that a physician's office qualifies as an FSSF or OHCF, only charges made by the physician's office, on its own behalf, would fall under the Plan's plain language.  Plaintiff's reliance on the Benefit Highlight section of the Plan is likewise unavailing because this section applies to "Physician's Services," and all services listed in this section refer to professional services by a physician, except for charges for lab and radiology, which may be provided by the physician's office or an independent diagnostic facility or outpatient hospital.  Defs.' Summ. J. App. 21.  Further, as previously noted, outpatient services are divided into professional and facility services, and Encompass does not fall into either category because it is not an individual professional such as a nurse or physician; nor is it a facility, according to its own admission.  *See* Defs.' Summ. J. Resp. App. 526 ("WE ARE NOT A FACILITY OR ASC AND SHOULD NOT BE PROCESSED AS SUCH.").

Finally, the court disagrees with Encompass's contention that the court must interpret the plans against Cigna based on Encompass's treatment of the licensure requirement as an exclusion.

The question here is not whether an exclusion applies but instead whether Encompass qualifies as any of the covered providers included in the plans, and Encompass has failed to establish or raise a genuine dispute of material fact as to whether it is an included provider under the Plan.

As assignee, Encompass stood in the shoes of the insured assignors and could assert only those rights that the insureds themselves could assert under the insurance plans. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 420 (Tex. 2000); *Fidelity & Deposit Co. of Maryland v. Conner*, 973 F.2d 1236, 1243 (5th Cir. 1992) (citing authority for the proposition that, under Texas law, an assignee's right to recover on an insurance policy issued to an insured is limited to the scope of the insurance policy's coverage). Because the insurance policies do not provide for coverage, Cigna did not breach the contracts in denying the claims for benefits submitted by Encompass. This is so regardless of the parties' contentions regarding licensure. Thus, no genuine dispute of material fact exists as to Encompass's breach of contract claim under Texas law, and Cigna is entitled to judgment as a matter of law on this claim, which will be dismissed with prejudice. Having determined that Plaintiff's contract claim fails for other reasons, it need not address the parties' licensure arguments or the alternate ground relied on by Cigna that the policies exclude coverage for the charges Encompass submitted, irrespective of the nature of the services rendered, because Encompass did not hold the patients responsible for any portion of the charges billed to Cigna.

### 2.    Quantum Meruit

Defendants moved for summary judgment on Plaintiff's quantum meruit claim, contending that Encompass cannot recover under a theory of quantum meruit because: (1) the plans are express contracts that cover the subject matter of the parties' dispute; and (2) Encompass did not render

services in a manner that apprised plan beneficiaries that it expected payment for the services and instead told plan participants that it would not hold them responsible for the charges billed to Cigna.

Plaintiff responds that it "asserted its quantum meruit claim in the alternative to its ERISA and breach of contract claims, and only in the event that the Court finds that the health benefit plans at issue do not apply."[15] Pl.'s Summ. J. Resp. 48. Plaintiff contends that, if it is determined that its services are not covered by the plans, the express contract rule relied on by Cigna is inapplicable. Plaintiff further asserts that Cigna's argument fails because Cigna is the entity sought to be charged here, not the plan beneficiaries, and Cigna was on notice that Encompass expected to be paid as a result of (1) Encompass's submission of claim forms that explained services had been performed; and (2) Cigna's past payment for Encompass's services and the same or similar services rendered by other providers across the country.

Quantum meruit as "an equitable remedy that is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) (internal quotation marks omitted). "The rule is applicable not only when the plaintiff is seeking to recover in quantum meruit from the party with whom he expressly contracted, but also when the plaintiff is seeking recovery from a third party foreign to the original contract but who benefitted from its performance." *Iron Mountain Bison Ranch, Inc. v. Easley Trailer Mfg., Inc.*, 42 S.W.3d 149, 160 (Tex. App.—Amarillo 2000, no writ); *see also Hester v. Friedkin Cos., Inc.*, 132 S.W.3d 100, 106 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). The party seeking to recover based on quantum meruit under Texas law must prove that:

---

[15] The court previously dismissed as preempted Plaintiff's quantum meruit claim to the extent based on plans governed by ERISA. Accordingly, all that remains is Plaintiff's quantum meruit claim that was asserted in the alternative to its claim for benefits under plans governed by state contract law, rather than ERISA.

1) valuable services were rendered or materials furnished;

2) for the person [or entity] sought to be charged;

3) which services and materials were accepted by the person [or entity] sought to be charged, used, and enjoyed by [it];

4) under such circumstances as reasonably notified the person [or entity] sought to be charged that the plaintiff in performing such services was expecting to be paid by the person [or entity] sought to be charged.

*Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). "A party generally cannot recover under quantum meruit when there is a valid contract covering the services or materials furnished." *In re Kellogg Brown & Root*, 166 S.W.3d at 740. The existence of an express contract, however, "does not preclude recovery in [q]uantum meruit for the reasonable value of services rendered and accepted which are not covered by the contract." *Black Lake Pipe Line Co. v. Union Construction Co.*, 538 S.W.2d 80 (Tex. 1976), *overruled on other grounds*, 767 S.W.2d 686, 690 (Tex. 1985). The existence of an express contract is an affirmative defense to quantum meruit that must be proved by the party asserting it. *Christus Health v. Quality Infusion Care, Inc.*, 359 S.W.3d 719, 722 (Tex. App.—Houston [1st Dist.] 2011, no pet.). *Tricon Tool & Supply, Inc. v. Thumann*, 226 S.W.3d 494, 500 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

The court has already determined that the services rendered by Encompass are not covered by the plans. Accordingly, Plaintiff's quantum meruit claim is not barred as a result of the existence of the plans. *See Black Lake Pipe Line*, 538 S.W.2d at 86. Moreover, as correctly noted by Plaintiff, the party sought to be charged here is Cigna, not the plan beneficiaries. Thus, properly framed, the issue is whether Encompass rendered services under such circumstances that reasonably notified Cigna that Encompass, in performing the services, expected to be paid by Cigna for the services rendered, not whether Encompass rendered services in a manner that reasonably notified plan

beneficiaries that it expected to be paid by plan beneficiaries.[16]  *See Vortt Exploration Co., Inc.*, 787 S.W.2d at 944; *see also Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 and n.4 (Tex. 1992) (determining that subcontractor was not entitled to recover under quantum meruit theory because there was no evidence "that the City had notice that Heldenfels anticipated payment from the City before Heldenfels delivered the T-beams").   Accordingly, Cigna has not met its initial burden as the summary judgment movant regarding Plaintiff's quantum meruit claim based on the grounds asserted in its motion and is not entitled to judgment on this claim.  The court, therefore, need not address whether Plaintiff's evidence is sufficient to raise a genuine dispute of material fact as to this claim.[17]

### E.       Defendants' Counterclaims to Recoup Overpayments

Cigna seeks to recover alleged "overpayments" from Encompass under section 502(a)(3) of ERISA and the Texas equitable theories of money had and received and unjust enrichment.  Cigna's claims for recoupment under ERISA pertain to payments made under plans governed by ERISA. Cigna's claims for recoupment under Texas equitable theories of money had and received and unjust enrichment pertain to amounts it paid under plans not governed by ERISA.  Cigna moved for summary judgment on its counterclaims for overpayments under ERISA and money had and

---

[16] Plaintiff alleges in paragraph 50 of its Amended Complaint as follows in support of its quantum meruit claim:

Encompass rendered valuable surgical services to CIGNA and to CIGNA's insureds. CIGNA received the benefit of having its healthcare obligations to its plan members discharged and its insureds received the benefit of the medical services provided to them by Encompass. As an insurer, CIGNA was reasonably notified that a medical service provider such as Encompass would be expect to be paid by CIGNA for the surgical services provided to CIGNA's insureds. For some time, CIGNA reimbursed Encompass, sometimes at a reduced rate. Thus, CIGNA acquiesced to and appreciated the services that Encompass provided. Encompass is entitled to quantum meruit recovery.

[17]  In making this determination, the court expresses no opinion regarding the strength of Plaintiff's quantum meruit claim or its summary judgment argument and evidence as to whether it rendered services under such circumstances that reasonably notified Cigna that Encompass, in performing the services, expected to be paid by Cigna for the services rendered, as Cigna did not move for summary judgment on this ground.

received.  Plaintiff moved for summary judgment on Cigna's counterclaims for overpayments under ERISA, money had and received, and unjust enrichment.

### 1.    Section 502(a)(3) of ERISA

Cigna contends that it is entitled to recover all monies paid to Encompass, whether under section 502(a)(3) of ERISA or Texas law.  Cigna contends that, because the services provided by Encompass to plan beneficiaries are not covered under the plans, the payments it received for those services "do not belong to [it] in equity or good conscience."  Defs.' Summ. J. Br. 34, 36. Cigna contends that the plans administered by it "grant [it] the right to recover any overpayments or other payments made erroneously," and the existence of this contractual provision in the plans creates a constructive trust upon the funds received by third parties.  *Id.* at 34.  (citing Defs.' Summ. J. App. 49, 50).

Plaintiff responds that Cigna's counterclaim under section 502(a)(3) fails because: (1) "Cigna has not identified any plan provision that it is seeking to enforce against Encompass"; and (2) Cigna "cannot establish any of the elements necessary to prevail under Section 502(a)(3) as a matter of law."  Pl.'s Resp. 49-50.  Plaintiff contends that any recovery by Cigna under section 502(a)(3) is limited to that provided by the plan terms.  Plaintiff contends that, even of the plans' terms allow it to recoup amounts paid, Cigna cannot establish that the funds it paid and seeks to recover from Encompass "belong in good conscience to the [plan]," as required to recover under section 502(a)(3). *Id.* at 52 (quoting *Avmed Inc. v. Browngreer PLC*, 300 F. App'x 261, 266 (5th Cir. 2008)). Encompass asserts that it would be inequitable to allow Cigna to recover for its counterclaim under section 502(a)(3) because, regardless of whether the services it provided qualify as a "Covered Expense" under the Plan,

> Encompass provided services for Cigna's members, was paid for those services ***at below the market rate***, and its provision of those services actually saved Cigna money. The alternative to Encompass's services (and the corresponding payment for those services) is not that Cigna pays nothing; rather, it is the use of an ASC, with a higher corresponding payment. Thus, this really is a situation of Cigna attempting to get something—Encompass's services, ambulatory surgical care, for its members—for nothing.

Pl.'s Resp. 53 (citations and footnotes omitted). In addition, Encompass contends that Cigna's recoupment claim, whether under section 502(a)(3) or other theories, fails because it has not submitted competent summary judgment evidence of its alleged damages.

Cigna replies that, contrary to Plaintiff's contention, the Plan "grants [it] the right to recover any overpayments made to Encompass," based on the following Plan provision:

> **<u>Recovery of Excess Benefits</u>**
> If CG pays charges for benefits that should have been paid by the Primary Plan, or if CG pays charges in excess of those for which we are obligated to provide under the Policy, CG will have the right to recover the actual payment made or the Reasonable Cash Value of any services.

Defs.' Reply 24 (citing Defs.' Summ. J. App. 49, 50). Cigna further asserts that it is entitled to recover the amounts paid because the services Encompass provided are not covered under the ERISA-governed plans, Cigna was not obligated to pay the charges, and Encompass lacks assignments for many plan participants. Cigna also disagrees with Encompass's contention that it has not met its burden of establishing damages of $505,959.66 for amounts erroneously paid to Encompass.

Because the parties' summary judgment arguments regarding Cigna's ERISA recoupment claim is based in large part on their contention that Cigna was not obligated to pay the claims submitted by Encompass because the services Encompass provided are not covered under the plans that are governed by ERISA, the court **denies without prejudice** Plaintiffs' and Defendants'

motions as to this claim and will delay resolution of this claim until after the remand of Plaintiff's ERISA benefits claims.

### 2. Unjust Enrichment and Money Had and Received

Cigna contends that the same facts that demonstrate it is entitled to recover overpayments under section §502(a) of ERISA also demonstrate that it is entitled to summary judgment on its claim for money had and received. Plaintiff, on the other hand, contends that Cigna is not entitled to recover under the equitable theories of money had and received or unjust enrichment because the money it was paid belongs in good conscience to it. According to Encompass, this is because, regardless of whether the services it provided are covered under plans, it actually provided the services in question and did so "below the market rate." Pl.'s Summ. J. Br. 48. Encompass maintains that, the alternative to it performing the services and the corresponding payment for those services "is not that Cigna pays nothing; rather, it is the use of an ASC, with a higher corresponding payment." *Id.; see also id.* at 50 ("Encompass provided services to Cigna's members for which Cigna (under) paid it, and by which Cigna avoided having to pay a larger expense for the member to have surgery performed in an ambulatory surgical center. Repayment of the money paid to Encompass in such circumstances is inequitable as a matter of law.") (footnote omitted). Encompass, therefore, contends that Cigna saved money by paying it instead of another healthcare provider to perform the services rendered by it. Encompass contends that, because it actually performed the services in question, it has an "honest claim" to the money Cigna paid it. *Id.* at 47 (quoting *Central States, Se. and Sw. Areas Health and Welfare Fund v. Pathology Labs. of Ark., P.A.*, 71 F.3d 1251, 1255 (7th Cir. 1995)). Plaintiff further asserts that Texas does not recognize a claim for unjust enrichment.

Plaintiff is correct that unjust enrichment is not recognized by Texas courts as an independent cause of action; however, "[w]hile unjust enrichment is not per se a cause of action, an action for restitution, or seeking the imposition of a constructive trust, may lie on the legal theory of unjust enrichment." *Mowbray v. Avery*, 76 S.W.3d 663, 680 & n.25 (Tex. App.—Corpus Christi 2002, pet. denied) (quoting *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 891 (Tex. 1998)). The equitable doctrine of unjust enrichment "applies the principles of restitution to disputes whe[n] there is no actual contract, based on the equitable principle that one who receives benefits that would be unjust for him to retain ought to make restitution." *Argyle Indep. Sch. Dist. v. Wolf*, 234 S.W.3d 229, 247 (Tex.App.–Fort Worth 2007, no pet.) (citation and internal quotation marks omitted). An action for money had and received is similarly equitable in nature, *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 203 n.1 (Tex. 2007), and "belongs conceptually to the doctrine of unjust enrichment." *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ); *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 507 (Tex. App.—Fort Worth 2012, no pet.) (explaining that an action for money had and received "may be maintained to prevent unjust enrichment when one person obtains money which in equity and good conscience belongs to another.").

Unjust enrichment and money had and received are not proper remedies "merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant, or because the benefits to the person sought to be charged amount to a windfall." *Heldenfels Bros. Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 42 (Tex. 1992) (unjust enrichment) (citation and internal quotation marks omitted); *Austin*, 735 S.W.2d at 649 (money had and received) (citation omitted). Instead, to recover under these theories, "the benefits to the other party must be actually unjust under the principles of equity." *Argyle Indep. Sch. Dist.*, 234 S.W.3d at 247 (unjust

enrichment); *see Austin v. Duval*, 735 S.W.2d 647, 649 (Tex. App.—Austin 1987, writ denied) (money had and received). Under Texas law, claims or requests for relief under equitable theories like unjust enrichment and money had and received are generally not available when an adequate legal remedy is available. *Stonebridge Life Ins. Co.*, 236 S.W.3d at 203 n.1 (citing *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 770 (Tex. 2005)); *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (holding that unjust enrichment is inapplicable when the parties have an express contract covering the subject matter of their dispute).

Even assuming that the existence of the language in the plans regarding recovery of excess benefits and overpayments does not apply to and preclude Cigna's requests for equitable relief under state law to recover amounts paid to Encompass under plans not governed by ERISA, the court determines that Cigna has not met its burden as the summary judgment movant or nonmovant as to these claims, and granting such relief is not appropriate because the benefits paid to Encompass are not actually unjust under principles of equity. Regardless of whether the services provided by Encompass qualify as "Covered Expenses" under the plans, it is undisputed that Encompass actually provided nursing services, equipment, and supplies to plan beneficiaries for the amounts charged to and paid by Cigna. Consequently, this is not a case in which Encompass received something for nothing. There is some evidence that "supplies are generally considered [by Cigna to be] part of a physician's overhead costs." Pl.'s Summ. J. App. 890. There is no evidence, however, that the nursing services, equipment, and supplies provided by Encompass to Cigna's plan beneficiaries are duplicative of any other services, equipment, or supplies provided by physicians. There is also no evidence that Cigna actually compensated physicians for these services or what Cigna generally refers to as "facility services" in addition to amounts paid the physicians for their professional

services. Plaintiff also submitted evidence that demonstrates that the medical procedures could not have been performed under Texas law absent the services it provided.

Moreover, although the court has determined that Encompass is not a covered healthcare provider under the plans, Cigna does not contend that the services provided were not medically necessary. Thus, if the services provided by Encompass had been performed by a covered healthcare provider, Cigna and the plans would still be out-of-pocket for those services. Cigna might arguably be entitled in equity to recover the difference between the amount it normally would have paid a covered healthcare provider if that amount was less than the amount paid to Encompass. Cigna, however, is not seeking to recover any such sums, and it has not presented any evidence of such sums. It instead is seeking to recover *all amounts* paid to Encompass. Allowing Cigna to recover all amounts paid to Encompass under the circumstances would amount to an inequitable windfall to Cigna by allowing it in effect to get something for nothing. *Central States, Se. & Sw. Areas Health & Welfare Fund*, 71 F.3d at 1255) ("The real conflict is between the Fund and its participants; one or the other should pay Pathology Laboratories' bill, but the Fund wants to achieve a state in which neither has paid. Why should we leave physicians holding the bag?").

The court, therefore, determines that no genuine dispute of material fact exists with respect to Defendants' counterclaims to recover alleged overpayments under Texas law, and Plaintiff is entitled to judgment as a matter of law on Cigna's request for relief under ERISA and the equitable doctrines of unjust enrichment and money had an received, all of which will be dismissed with prejudice.

### F. Objections to Evidence and Experts

As the court only considered evidence that is admissible pursuant to Rule 56 of the Federal Rules of Civil Procedure, Rule 702 of the Federal Rules of Evidence, and the summary judgment and ERISA standards herein enunciated, unless otherwise noted, it **overrules as moot** Plaintiff's Objections to Defendants' Summary Judgment Evidence (Doc. 92); **overrules as moot and denies as moot** Defendants' Objections to and Motion to Strike Plaintiff's Summary Judgment Evidence (Doc. 112); and **denies as moot** Plaintiff Encompass Office Solutions, Inc.'s Motion to Exclude the Expert Testimony of Ms. Nathalie Woolfrey and Dr. Robert McLaughlin (Doc. 86), to the extent relied on by Defendant with respect to the parties' summary judgment motions.

## IV. Conclusion

For the reasons stated, the court **grants in part and denies in part** Plaintiff Encompass Office Solutions, Inc.'s Motion for Summary Judgment (Doc. 81); and **grants in part and denies in part** Defendants' Motion for Summary Judgment (Doc. 87). Specifically, the court determines that Plaintiff has constitutional and prudential standing to assert its claims for benefits under state law and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Plaintiff's summary judgment motion as to standing is, therefore, **granted**, and Defendants' summary judgment motion based on standing is **denied**. With respect to Plaintiff's breach of contract claim under state law, Plaintiff's summary judgment motion is **denied**, Defendants' summary judgment motion is **granted**, and this claim is **dismissed with prejudice**, as no genuine dispute of material fact exists as to the elements for this claim. With respect to Plaintiff's quantum meruit claim, Defendants' summary judgment motion is **denied** because the court determines that a genuine dispute of material fact exists as to the elements of this claim. Regarding

Defendants' claims to recoup alleged overpayments under state law equitable theories of unjust enrichment and money had and received, Plaintiff's summary judgment motion is **granted**, Defendants' summary judgment motion as to its money had and received claim is **denied**, and these claims are **dismissed with prejudice**, as no genuine dispute of material fact exists as to the requirements for these claims. Because the court determines that Plaintiff's benefits claims under ERISA should be remanded to Defendants' plan administrator, the parties' summary judgment motions as to Plaintiff's ERISA claims, Defendants' related administrative exhaustion defense, and Defendants' counterclaim to recover alleged overpayments under ERISA are **denied without prejudice**. As a result of this opinion and the court's prior opinions, the only claims remaining are Plaintiff's benefits claims under ERISA, Plaintiff's request to recover benefits for claims not governed by ERISA based on a theory of quantum meruit, and Defendants' counterclaim to recover alleged overpayments under ERISA. Also remaining are the parties' affirmative defenses that were not disposed of by this opinion.

Further, unless otherwise stated, the court **overrules as moot** Plaintiff's Objections to Defendants' Summary Judgment Evidence (Doc. 92); **overrules as moot and denies as moot** Defendants' Objections to and Motion to Strike Plaintiff's Summary Judgment Evidence (Doc. 112); and **denies as moot** Plaintiff Encompass Office Solutions, Inc.'s Motion to Exclude the Expert Testimony of Ms. Nathalie Woolfrey and Dr. Robert McLaughlin (Doc. 86).

Plaintiff's claims for benefits under ERISA are **remanded** to Defendants' plan administrator for further adjudication consistent with this opinion for a period of **180 days**. During this interim period, the court **administratively closes** the case for statistical purposes. The court's decision to administratively close the case while Defendants further consider Plaintiff's ERISA claims is not a

dismissal or disposition of the parties' remaining claims under ERISA or this case, and does not affect the court's jurisdiction over this action. Should further proceedings become necessary or desirable, any party may file a motion to reopen the case to initiate such further proceedings, or the court may take such action *sua sponte*.

To avoid delay, after expiration of the 180-day remand period, or at an earlier time if the review of Encompass's claims is completed before the expiration of the 180 days, the parties **shall** inform the court and state whether the action needs to be reopened for further proceedings. In addition, no further summary judgment motions or supplemental briefs outside of what is allowed by the Northern District's Local Civil Rules will be permitted, and the parties **must** seek and obtain leave before filing any such motions and supplemental briefs in the future.

**It is so ordered** this 31st day of July, 2017.


Sam A. Lindsay
United States District Judge